**In re NRG RESOURCES, INC.**

Civ. A. No. 86–1098.
Bankruptcy No. 482–00261.

United States District Court,
W.D. Louisiana,
Lake Charles Division.

Aug. 15, 1986.

E. Harold Saer, Jr., John G. Denegre, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, La., for Unsecured Creditors' Committee.

Ronald J. Bertrand, John L. Van Norman III, Lake Charles, La., for debtor.

## MEMORANDUM OPINION

VERON, District Judge.

### I.  INTRODUCTION

This matter is before the Court upon appeal from an interlocutory order of the United States Bankruptcy Judge for the Western District of Louisiana, Opelousas Division, allowing interim compensation to be paid to Ronald J. Bertrand and John L. Van Norman III, "attorneys for the debtor." [1]  Bankruptcy Rule 8001(b).  This Court has jurisdiction to entertain this appeal pursuant to 28 U.S.C. § 158(a) and 28 U.S.C. § 1334(b).  The instant appeal has been lodged by the Committee of Unse-

cured Creditors, which claims that Attorneys Bertrand and Van Norman were wrongfully allowed compensation for employment because they were never employed by the trustee pursuant to the Bankruptcy Court's approval, and also because the Bankruptcy Judge failed to follow the procedures mandated by the Fifth Circuit Court of Appeals for awarding attorneys' fees.  After having reviewed the designated record on appeal, the briefs submitted by counsel, and having considered the oral argument of counsel as well as all facts relevant to the resolution of the controversy, the Court now makes the following findings and conclusions.

### II.  FACTUAL BACKGROUND

The instant bankruptcy proceeding was commenced on April 27, 1982 when NRG Resources, Inc. filed a proceeding for reorganization under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Louisiana, Opelousas Division.  On the same date, the bankruptcy court entered an order allowing NRG Resources, Inc. to operate as a debtor-in-possession, thereby allowing NRG to continue in possession of its property and to operate its business subject to the control of the Bankruptcy Court.  At the same time, the bankruptcy court authorized the employment of Attorneys Ronald J. Bertrand and John L. Van Norman III [sometimes hereinafter referred to as appellees] to be employed as attorneys for the debtor-in-possession.

On June 16, 1982, the Bankruptcy Judge appointed Hugh W. Thistlewaite, Jr. as trustee "[u]pon considering the wishes of the Creditors' Committee expressed at an informal conference...."  Since the time of the trustee's appointment, the administration of the estate and the operation of the debtor's business has been carried out by the trustee, and no application was ever made to the bankruptcy court for the debt-

---

**1.** The exact capacity in which these two attorneys have purportedly performed services, i.e., as attorneys for the debtor, for the debtor-in-

possession, or for the trustee, is discussed in detail *infra.*

or to continue to conduct its own business or retain use or possession of any of debtor's assets. On July 15, 1982, the trustee made application to employ Attorney Robert P. Brenham as attorney for the trustee, and the Bankruptcy Judge approved Brenham's employment as of that date. The trustee, Hugh Thistlewaite, Jr., subsequently applied for his own employment as attorney for the trustee, which was filed and approved on August 12, 1982. Since that time, both Thistlewaite and Brenham have served as co-counsel for the trustee.

When appellees were initially retained by NRG Resources, Inc. to file for bankruptcy under Chapter 11, they split a retainer fee in the total amount of $25,000, receiving $12,500 each. Appellees assert that even after the appointment of the trustee and the trustee's attorney, they "continued to represent NRG Resources, Inc. and to assist and cooperate with the trustee and the trustee's attorney in the administration of the case." Appellee's Brief on Appeal, p. 2. On January 3, 1983, appellees each received $10,000 for interim fees. On July 19, 1983, Attorney Bertrand applied for compensation and, although the Bankruptcy docket fails to denote it, Bertrand admits that he received $20,000 in interim fees during this approximate time period. On August 15, 1983 Attorney Van Norman applied for and received $20,000, all in the same day. On July 30, 1984, Attorney Bertrand applied for and received $25,000 in interim fees, all in the same day. On August 6, 1984, Attorney Van Norman applied for and received $25,000, in the same day. Thus, at the time when Appellees Bertrand and Van Norman made their fourth application for interim fees in early 1986, they had each previously received a total of $67,500 each. Appellees' applications for interim fees request compensation in the amount of $15,000 each for the services they purportedly rendered "on behalf of the debtor *or* on behalf of the trustee" during the time period of September 1, 1982 through October 30, 1982.

The interim fees paid to Appellees Bertrand and Van Norman are in addition to interim fees paid to the trustee Thistlewaite, apparently in his capacity as attorney for the trustee although this is unclear from the record before the Court, and also in addition to interim fees paid to the trustee's attorney, Brenham. The Court notes with particular interest that the interim fee applications on behalf of Thistlewaite, Brenham, Bertrand and Van Norman have always been submitted to the bankruptcy court at approximately the same time for exactly the same amount of money; i.e., on December 27, 1982, all four attorneys applied for interim compensation in the amount of $10,000 each, and all subsequent interim fee requests by the four attorneys were made well within two months of each other, and always for the exact same amount of compensation.[2] The total amount of compensation paid to Thistlewaite and Brenham as co-counsel for the trustee, prior to April 1, 1986, amounts to $70,000 apiece.

The Unsecured Creditors' Committee filed an objection to appellees' application for interim compensation which was originally noticed on December 11, 1985. Following the bankruptcy court's allowance of $15,000 in interim fees to appellees Bertrand and Van Norman in March, 1986, the Unsecured Creditors' Committee sought

---

**2.** On 12/27/82, Thistlewaite, Brenham, Bertrand and Van Norman all applied for $10,000 interim compensation, which was awarded on 1/3/83.

Thistlewaite and Brenham each received $20,000 in attorney's fees on 6/21/83. On 7/19/83, Bertrand applied for interim compensation, which apparently was awarded in the amount of $20,000; and on 8/15/83, Van Norman applied for and received $20,000.

On 7/30/84, Thistlewaite and Bertrand each received $25,000 in interim compensation. Van Norman applied for and received $25,000 on 8/6/84, and Brenham did the same on 8/20/84.

On 12/11/85, Thistlewaite, Brenham, Bertrand and Van Norman all applied for $15,000 each in interim compensation for their attorney services. The Unsecured Creditors' Committee objected, and it is the Bankruptcy Court's award of $15,000 interim fees to Bertrand and Van Norman from which the Unsecured Creditors' Committee appeals.

leave to appeal the interim allowance. This Court has entertained the appeal in order to determine the propriety of the Bankruptcy Judge's actions.

### III. APPELLEES' STATUS

Appellant, the Unsecured Creditors' Committee, initially argues that the bankruptcy court erred in awarding attorneys' fees to Bertrand and Van Norman because they were never employed by the trustee with the approval of the bankruptcy court as required by 11 U.S.C. §§ 327(a), (e) and Bankruptcy Rule 2014. Section 327(a) provides that the trustee must receive the court's approval before employing an attorney "to represent or assist the trustee in carrying out the trustee's duties under this title." Not directed specifically to the trustee's employment of attorneys, Bankruptcy Rule 2014 provides that the employment of attorneys "shall be made only on application of the trustee or committee, stating the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for his selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, or any other party in interest, their respective attorneys and accountants." The appellees, however, contend that the requirements of section 327(a) do not apply to them as attorneys for the debtor, and that the requisites of Bankruptcy Rule 2014 have been complied with inasmuch as they previously were approved for employment as attorneys for the debtor at the commencement of the bankruptcy proceeding on April 27, 1982.

After carefully reviewing the record, it is apparent that the appellees have conducted themselves with little regard for the requirements imposed by the Bankruptcy Code and the strong policies underlying it. The ambiguity with which appellees have characterized the posture in which they have purportedly performed services is well demonstrated by Paragraph 7 of their "Application for Interim Fees as Attorney for Debtor":

> All of the services for which compensation is requested were performed for and on behalf of the debtor *or* on behalf of the trustee. Applicant has on numerous occasions appeared before the Court representing the debtor corporation and the trustee under a specific retainer and on each occasion the Court allowed your applicant to enroll as said attorney for the trustee. Additionally, applicant has rendered the vast majority of his services for the debtor and the estate with actual knowledge of the trustee and/or with specific instructions to do so by the trustee.

Nowhere in the record does it appear that either appellee has ever been approved by the Court to be employed as "attorney for the trustee," and appellees admitted as much at oral argument and in their appellate briefs.

Despite the numerous references in their fee applications and their representations to the bankruptcy court at the hearing on their applications, when they had the trustee testify that "all the work that [appellees] performed had been at our [i.e., Trustee Thistlewaite and Attorney Brenham's] requests," appellees now strongly urge the Court that their services were *not* rendered "for the trustee," nor rendered as attorneys for the trustee. Rather, appellees argue that they continued to perform services for the estate after the trustee's appointment as attorneys for the debtor, and therefore they need not have complied with the specific requirements of 11 U.S.C. § 327(e).

■ The nature of a bankruptcy proceeding as established by the United States Bankruptcy Code is such that an attorney is allowed to be compensated for the services he renders in counselling and assisting whoever controls the estate's assets and operations, whether that be the debtor-in-possession or the trustee. The debtor-in-possession and the trustee do not co-exist, however, as a "debtor-in-possession" is recognized as such only absent the appoint-

ment of the trustee, unless otherwise specifically authorized by the court. A debtor-in-possession has all the rights (other than the right of compensation), powers, obligations and duties of a trustee under 11 U.S.C. § 1107. Once the trustee is appointed, however, the debtor-in-possession no longer exists as such because he no longer serves in the management of estate assets.[3] The Code clearly contemplates that the appointed trustee *replaces* the debtor-in-possession in order to administer the assets of the debtor's estate and to protect the security interests of the creditors.

■ The intent of the Bankruptcy Code seems crystal clear that just as a trustee replaces the debtor-in-possession for the purpose of administering the estate and operating its business, so it is that the trustee's attorney displaces the debtor's attorney in order that the *trustee* will have counsel and assistance in performing his fiduciary duties. There is no need for the debtor to have assistance performing those duties which are fully assumed by the trustee, and hence any "debtor's attorneys" can serve no beneficial purpose for the estate *unless* they are characterized as attorneys for the trustee.

■ Recognizing the important intent of the Bankruptcy Rules to conserve and protect the estate assets, 11 U.S.C. § 327 makes specific provision for the employment of professional persons by the trustee. Under subsection 327(e), the *only* way in which an attorney who has previously represented the debtor can be employed by the trustee is when such employment is authorized by the court and is "for a specified special purpose, other than to represent the trustee in conducting the case." [4]

The House Judiciary Report specifically notes "[t]his subsection does not authorize the employment of the debtor's attorney to represent the estate generally or represent the trustee in the conduct of the bankruptcy case." H.Rep.No. 95–595 to accompany H.R. 8200, 95th Cong., 1st Sess. (1977) p. 328, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6284. This subsection applies specifically to attorneys who have represented the debtor and clearly contemplates that the trustee can employ a debtor's attorney *only* "for a specified special purpose." This provision thus recognizes the long-standing general rule that the trustee should not ordinarily employ an attorney who represents or has represented the bankrupt debtor, because the trustee should have an advisor impartial as between creditors. *See In re Smith*, 203 Fed. 369, 372 (6th Cir.1913). Moreover, the "specified special purpose" requirement serves the important policy of avoiding an unnecessary duplication of services at the expense of the estate. *In Re U.S. Golf Corp.*, 639 F.2d 1197, 1201–02 (5th Cir. 1981).

Appellees nevertheless contend that there is specific authority for the continuation of the debtor attorney's employment even after the appointment of the trustee. In support of this contention, appellees cite the case of *In re Zweig*, 35 B.R. 37 (Bankr. N.D.Ga.1983), which held that the debtor's attorney had performed services which "were of a benefit to the estate" and therefore compensable despite the trustee's objection. That case, however, dealt with the sole issue of whether or not the services did in fact benefit the estate. There is no way of knowing whether the services per-

**3.** The Bankruptcy Code does provide that the debtor may be allowed by the Court to continue to operate his business, *see* 11 U.S.C. § 1108, and use the property of the debtor's estate in the ordinary course of the debtor's business, *see* 11 U.S.C. § 363(c)(1). No order has been entered in the case at bar allowing the debtor to exercise any such management or use of the debtor's estate.

**4.** 11 U.S.C. § 327(a) allows for the trustee's employment of professional persons, *"[e]xcept as*

otherwise provided" as in § 327(e), which provides:

The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

formed by the debtor's attorney were in an instance where the debtor had been permitted by the Court to continue to operate his business pursuant to 11 U.S.C. § 1108, and use the property of the debtor's estate in the ordinary course of the debtor's business pursuant to 11 U.S.C. § 363(c)(1). Moreover, the sole objection was raised by the trustee, unlike the present instance where objected-to services were all performed at the specific direction of the trustee. Thus, the case at bar is clearly an entirely different matter.

Appellees also cite the case of *In re Rhoten*, 44 B.R. 741 (Bankr.M.D.Tenn. 1984), wherein compensation was permitted a debtor's counsel after a trustee had been appointed. In allowing the debtor's attorney compensation for objecting to the claims of an individual creditor, the court noted that this was actually the trustee's duty and that "it is not obvious that a debtor would ordinarily have any interest in objecting to the claims of individual creditors." *Id.* at 743. The court additionally observed that the trustee did not participate in the debtor's objection to the creditor's claim, stating that the objection was entered for the benefit of the estate: "Though it will not always be appropriate to allow a debtor's counsel compensation from the estate for claims litigation, *on these facts* the [claim] will be allowed." *Id.* The Court thus recognized that it was, in fact, unusual for a debtor's attorney to perform services ordinarily belonging to the trustee, contrary to appellees' contention.[5]

Appellees further argue that 11 U.S.C. §§ 330–331 authorize a debtor's attorney to seek interim compensation, but these sections seem simply to recognize such a right where the debtor is continuing in possession. These provisions do *not* support the proposition that the debtor's attorney is allowed interim compensation for services rendered after the appointment of a trustee and employment of trustee's attorneys.

A trustee having been appointed, it is his duty to administer the estate and anyone participating in the performance of that duty must meet the requirements of 11 U.S.C. § .327. Of course, there nevertheless are services for which a debtor's attorney is entitled to compensation, such as that received for filing the petition, so long as they are rendered in the capacity of debtor's attorney and do not continue well beyond the time of the trustee's appointment.

■ In any event, the issue of whether or not the debtor's attorney is allowed to continue to work for the benefit of the debtor's estate after the trustee has been appointed is not dispositive of the issue before the Court, as it is obvious that ser-

---

**5.** Duplication of attorney employment has also been cited as improper in the context of having separately designated attorneys represent the debtor and the debtor-in-possession. The Sixth Circuit Court of Appeals, in *Cle-Ware Industries, Inc. v. Sokolsky*, 493 F.2d 863 (6th Cir.1974), disapproved a local civil rule in the Northern District of Ohio which mandated separate attorneys for the debtor and debtor-in-possession, stating:

This court strongly disapproves the practice of appointing separate counsel as attorney for the debtor-in-possession and at the same time compensating another attorney at the expense of the bankrupt estate in his capacity as counsel for the debtor for services rendered after the filing of a petition for a plan of arrangement. Hereafter we will not approve this procedure as a general practice in the Sixth Circuit. Only in exceptional circumstances, which we do not now foresee, will this procedure be allowed by this court. The debtor and the debtor-in-possession is one and the same person, although "wearing two hats." We see no valid reason why, as a general rule, his legal representation in both capacities should not be limited to one attorney or one set of attorneys. In the ordinary situation, as in the instant case, there is no actual or potential conflict of interest requiring or justifying payment for services of separate attorneys. *Id.* at 871.

The same analysis may be applied in support of the rule against having two sets of attorneys, "wearing two hats"—one of attorneys for the debtor, the other of attorneys for the trustee—represent the debtor's estate. But this analysis yet does not account for the strict requirement of section 327(e), which essentially provides that an attorney for the debtor *cannot* perform services for the estate after the appointment of a trustee *unless* it is for a "specified special purpose."

vices performed by appellees in the case at bar were at the express direction of the trustee and therefore were most certainly performed in the capacity of trustee's attorneys, *not* of debtor's attorneys. The Bankruptcy Code certainly does not allow attorneys to change hats at their own whim in order that its specific requirements may be circumvented. Appellees previously represented the debtor and thus section 327(e) of the Bankruptcy Code plainly prohibits them from generally representing the trustee. Having represented the debtor, appellees are eligible only to represent the trustee for a "specified special purpose" for which the Court *must* grant prior approval.

## IV. NUNC PRO TUNC DESIGNATION

Appellant argues that the appellees should be denied compensation altogether because they failed to receive prior approval of the bankruptcy court for their employment by the trustee as required by 11 U.S.C. 327. From a straightforward reading of this section, it is apparent that the trustee is not authorized to have an attorney perform services at his direction unless the approval of the bankruptcy court has been first obtained. Several courts have uniformly held "that an attorney cannot receive compensation where no order has been entered authorizing the employment." *Albers v. Dickinson*, 127 F.2d 957 (8th Cir.1942). *See also In re Progress Lektro Shave Corp.*, 117 F.2d 602 (2d Cir.1941); *In re Calpa Products Company*, 411 F.2d 1373 (3d Cir.1969); *Gochenour v. Cleveland Terminals Bldg. Co.*, 142 F.2d 991 (6th Cir.1944) *cert. denied*, 323 U.S. 767, 65 S.Ct. 120, 89 L.Ed. 614 (1944). The courts taking this position have read section 327 to require an inflexible application such that a bankruptcy court may not under any circumstances approve compensation for an attorney who has not had previously authorized employment. The rule that where there has been no compliance with section 327 there is no right at all to compensation has been applied by numerous courts so as to exclude any nunc pro tunc approval of employment, regardless of the time or effort of the attorney or the circumstances of the particular case. *In re Eureka Upholstering Co.*, 48 F.2d 95 (2d Cir.1931); *In re Call*, 36 B.R. 374 (Bankr.S.D.Ohio 1984); *In re Rene Press, Inc.*, 23 B.R. 381 (Bankr. D.Mass.1982); *In re Johnson*, 21 B.R. 217 (Bankr.D.Colo.1982); *In re Mork*, 19 B.R. 947 (Bankr.D.Minn.1982).

The Fifth, Seventh, and Ninth Circuits, as well as some other courts, have declined to follow the strict compliance rule and have permitted nunc pro tunc relief in exceptional circumstances, under the bankruptcy court's exercise of its powers as a court in equity. *In re Triangle Chemicals, Inc.*, 697 F.2d 1280 (5th Cir.1983); *In re Laurent Watch Co.*, 539 F.2d 1231 (9th Cir.1976); *Stolkin v. Nachman*, 472 F.2d 222 (7th Cir.1973); *In re King Electric Co.*, 19 B.R. 660 (Bankr.E.D.Va.1982); *In re Allen*, 8 B.R. 221 (Bankr.N.D.Ga.1981). In the case of *In re Triangle Chemicals, Inc.*, the Fifth Circuit Court of Appeals held that although an attorney for the debtor-in-possession did not obtain court approval of his employment before rendering services, the bankruptcy court nevertheless had discretion as a court of equity to consider whether such approval should be granted nunc pro tunc. In so holding, the late Honorable Circuit Judge Albert Tate, Jr. observed that it was uncontradicted evidence that the attorney proved his itemized accounting of the services and expenses and showed that he had performed services that had preserved at least some five to six hundred thousand dollars for the debtor's estate. Moreover, the evidence showed that none of the creditors at the time of the hearing objected to the allowance of the fees sought. Because "[t]here is an overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction," *Bank of Marin v. England*, 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966), the Fifth Circuit rejected the inflexible approach and remanded the case in order that the bankruptcy court might examine the facts in the light of equitable considerations and determine whether the attorney seeking compensation might be

designated as attorney for the debtor-in-possession nunc pro tunc. In doing so, however, the Fifth Circuit admonished:

> While equitable powers may permit nunc pro tunc appointment in rare or exceptional circumstances, we do not intend by our holding to encourage any general nonobservance of the contemplated preemployment court approval. We hold only that, where through oversight the attorney has neglected to obtain such prior approval but has continued to perform services for the debtor/debtor in possession [/trustee] ..., the bankruptcy court retains equitable power in the exercise of its sound discretion, under exceptional circumstances, to grant such approval nunc pro tunc, upon proper showing, and to award compensation for all or part of the services performed by such attorney that have subsequently benefited the debtor's estate and, consequently, its creditors. *In re Triangle Chemicals, Inc.*, 697 F.2d at 1289.

■ It is important to note that *In re Triangle Chemicals* did not address the situation with which this Court is confronted, i.e., a situation where attorneys for the debtor-in-possession have continued to perform services representing the estate generally well after the time that a trustee and attorneys for the trustee have been appointed by the bankruptcy court to administer the debtor's estate. Because this Court sits as a court of equity, however, it considers it appropriate to examine whether the facts of the case at bar reveal "rare or exceptional circumstances" such that appellees may be designated as attorneys for the trustee nunc pro tunc despite the Bankruptcy Code's clear prohibition of a debtor's attorney's general representation of the estate after the appointment of a trustee and despite appellee's failure to obtain court approval for employment for a specified special purpose.

## V. EQUITABLE CONSIDERATIONS AND UNREASONABLENESS OF COMPENSATION SOUGHT

A close review of the factual circumstances of the case at bar makes it amply clear that there is an utter lack of exceptional circumstances which would warrant any nunc pro tunc designation of appellees as attorneys for the trustee. Not only is there an absence of any exceptional circumstance which would merit such a designation, but it is apparent that appellees failed to meet their minimal burden of proof in establishing the reasonableness of the requested compensation even if their employment was authorized by the Bankruptcy Code.

■ Apart from the issue of appellees' lack of authorization to serve as attorneys for the trustee, it is well established under the Bankruptcy Code that those seeking compensation for professional services rendered on behalf of a debtor's estate bear the burden of proof in establishing the reasonable value of their services. *In re U.S. Golf Corp.*, 639 F.2d 1197 (5th Cir. 1981). In addition to examining the validity of any objections raised by a party in interest to the requested compensation, the bankruptcy court has an independent duty to investigate the reasonableness of the compensation sought. Bankruptcy Rule of Procedure 2016(a); *In re Thomas, Inc.*, 43 B.R. 510 (Bankr.D.Mass.1984). In the case at bar, the applicant-appellees failed to meet their burden of proof and the bankruptcy court failed to abide by its duty to investigate the reasonableness of the compensation which it saw fit to award.

■ The Fifth Circuit Court of Appeals has mandated that a bankruptcy judge *must consider* the following twelve factors before he awards an attorney's fee:

(1) The time and labor required;

(2) The novelty and difficulty of the questions;

(3) The skill requisite to perform the legal service properly;

(4) The preclusion of other employment by the attorney due to the acceptance of the case;

(5) The customary fee;

(6) Whether the fee is fixed or contingent;

(7) Time limitations imposed by the client or other circumstances;

(8) The amount involved and the results obtained;

(9) The experience, reputation, and ability of the attorneys;

(10) The "undesirability" of the case;

(11) The nature and length of the professional relationship with the client;

(12) Awards in similar cases.

*In re U.S. Golf Corp., supra* at 1201; *In re First Colonial Corp.*, 544 F.2d 1291, 1298–99 (5th Cir.1977), *cert. denied* 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977), *quoting from Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974).

Two additional considerations must also enter the analysis in the bankruptcy context. First, bankruptcy estates are to be administered as economically as possible, meaning that awards should be made at the lower end of the spectrum of reasonableness. *First Colonial, supra*, 544 F.2d at 1299. Second, the court is to be aware of the policy against duplicative fees and compensation for nonlegal services. An attorney is not to be compensated for tasks which are properly the responsibility of the trustee and is not to be compensated at a rate equivalent to legal work for tasks which could be properly performed by less costly nonlegal employees. *Id.*, 544 F.2d at 1299.

The Bankruptcy Code provides for an automatic stay which suspends all actions by creditors to collect on their debts once the bankruptcy petition is filed in order that the debtor may reorganize and a plan may be proposed to pay creditors. *See* 11 U.S.C. § 362. It is for this general purpose that counsel are employed and compensation is paid from assets which, but for the bankruptcy, would be available to pay creditor's claims.

█ Legal counsel, whether acting for a debtor in possession or for a trustee, have a definite responsibility to keep costs to the estate to an absolute minimum. *See In re First Colonial*, 544 F.2d at 1299. Thus, all legal services must be reasonably related toward accomplishing the intended goal of satisfying the legitimate claims of creditors. Moreover, it is important to consider the success, or lack of success, toward accomplishing this goal at each stage of the proceeding.

█ Considering all of the appropriate factors, including the nature, extent, and value of the purported services rendered, the fee requests for the September through October 1982 time period are obviously overstated. From an examination of the bankruptcy docket sheet, it is apparent that there were few significant developments in the case during the two month period for which the bankruptcy court saw fit to award a total of $60,000.00 in attorney's fees, $30,000 of which is contested in this appeal.

While appellees urge that this "has been an extremely complicated case," nowhere in the record does there appear to be any justification for the employment of *four* experienced bankruptcy attorneys to represent the same debtor and appear with one another at various conferences and proceedings. From the fee applications before the Court, it appears that the estate was needlessly represented by more than one attorney upon several occasions. This unnecessary duplication, triplication, and quadruplication of services is illustrated in the following fee application of Ronald J. Bertrand:

| DATE | SERVICES RENDERED | TIME (HOURS) |
|---|---|---|
| 9/3/82 | Conference with trustee ["Will"] Thistlewaite and John L. Van Norman; Trip to NRG; conference with John L. Van Norman and Myron; Review correspondence; review reserve reports | 6.00 |

\* \* \*

| | | |
|---|---|---|
| 9/15/82 | Phone conversation with Will [Thistlewaite, the trustee]; conference with John L. Van Norman; confer- | |

| DATE | SERVICES RENDERED | TIME (HOURS) |
|------|-------------------|--------------|
| | ence with Will, John L. Van Norman and Bank; conference with Will, John L. Van Norman and UNC; conference with Will, Anita and Myron; review correspondence | 8.00 |

\* \* \*

| DATE | SERVICES RENDERED | TIME (HOURS) |
|------|-------------------|--------------|
| 10/05/82 | Phone conversation with UNC—audit; phone conversation with John L. Van Norman; phone conversation with UNC Audit Team; trip to John L. Van Norman's office; review correspondence; conference at NRG's office (John L. Van Norman, Anita and Audit Team); Long distance phone conversation with John Brasher's office; long distance with Will [the trustee]; long distance with Bob Brenham [attorney for the trustee]; two phone conversations with Myron; two phone conversations with John L. Van Norman re Conoco and well files; phone conversation with Myron, Will, Anita and John L. Van Norman; conference with Myron and John L. Van Norman | 4.50 |

Similarly, the fee application of appellee, John L. Van Norman, provides:

| DATE | SERVICES RENDERED | TIME (HOURS) |
|------|-------------------|--------------|
| 9/3/82 | Meeting with Trustee, Bertrand and Palermo; Review reserve reports | 6.00 |

\* \* \*

| DATE | SERVICES RENDERED | TIME (HOURS) |
|------|-------------------|--------------|
| 9/25/82 | Phone conversation with Myron, Palermo; conference with Trustee, Ronnie Bertrand and First Bank and Trust of Groves, Texas, representatives | 6.50 |

\* \* \*

| 9/30/82 | Trip to Lafayette; meeting with Ronnie Bertrand; Will Thistlewaite; Bob Brenham and Sandy Saer | 5.50 |

\* \* \*

| 10/05/82 | Phone conversation with Ronnie Bertrand; Conference with Ronnie Bertrand; Emergency trip to NRG Resources, Inc.'s office UNC Audit Team; conversation re Conoco; conversation with Beth Hardy | 4.00 |

\* \* \*

| 10/07/82 | Meeting with Ronnie Bertrand and phone conversation with Bob Brenham | 1.25 |

\* \* \*

| 10/30/82 | Meeting with Ronnie Bertrand re: status of NRG Resources, Inc. in general | 3.00 |

These entries contained in the fee applications of appellees is a minor sampling of the duplication, triplication, and quadruplication of efforts. On at least 9/30/82 and 10/05/82, it appears that four attorneys being compensated from the estate were all involved in the same matters! Throughout the fee applications of each appellee, a substantial majority of time is spent in talking with one another as well as with Attorney

Brenham, attorney for the trustee, and also with the trustee, who was acting as co-counsel for the trustee.[6]

Numerous other difficulties with the fee applications appear apart from the quadruplication of legal services for the trustee. It should go without saying that a fee application should be specific enough to identify the exact legal services rendered in order that the court may be able to determine the difficulty of the case and what results were achieved for the estate. *In re Werth*, 32 B.R. 442, 445 (Bankr.D.Colo. 1983). The following examples of an utter lack of specificity in the application of appellee Bertrand appear as follows:

| DATE | SERVICES RENDERED | TIME (HOURS) |
|------|-------------------|--------------|
| 9/2/82 | Conference with John L. Van Norman; Review correspondence, miscellaneous other things; take inventory | 2.00 |
| | * * * | |
| 9/22/82 | Phone conversation with John L. Van Norman; phone conversation with Myron; phone conversation with Will; conference with Myron, John L. Van Norman, Tex Sevens and Will; thereafter conference with John L. Van Norman and Myron | 6.00 |
| | * * * | |
| 10/26/82 | Phone conversations with Myron (2); phone conversation with Anita; phone conversations with Dick Boise (2); phone conversations with Larry Carter; review correspondence; conference with John L. Van Norman | 2.50 |

Similarly, the fee application of appellee Van Norman exhibits the following:

| DATE | SERVICES RENDERED | TIME (HOURS) |
|------|-------------------|--------------|
| 9/1/82 | Conference with Ronnie Bertrand; several phone conversations with Myron Palermo; phone conversation with representatives of Koch Oil Co.; conference with Jim Ortego re: compulsory counterclaims | 3.50 |
| | * * * | |
| 10/6/82 | Phone conversation with Ronnie Bertrand; miscellaneous matters with regard to NRG resources | 1.00 |
| | * * * | |
| 10/14/82 | Conference with Myron Palermo | 3.00 |
| | * * * | |

These applications should at least note the nature and purpose of the various meetings and conferences. While the fee application of Van Norman may sometimes note the companies being discussed, there is nothing to indicate the exact nature of the conference or the result of it. The only thing that the Court can state with any degree of certainty from reviewing the fee applications of appellees is that they like to engage in a lot of telephone conversations and conferences with one another and with

---

**6.** Apparently, the Trustee was acting as Attorney for the Trustee along with his co-counsel Brenham throughout the relative two-month period, as his interim fee application for $15,000 for this period is designated on the docket sheet: "NOTICE of filing of applications for Interim Compensation; ... Hugh Wm. Thistlewaite, as Atty. for Trustee in sum of $15,000.00; ...."

the trustee and the trustee's attorney Brenham. The fee applications submitted do not appear to this Court to be in compliance with Bankruptcy Rule of Procedure 2016 insofar as they do not contain a "detailed statement" of the services performed in that they are quite general in nature.

Another deficiency in the applications is the grouping of services performed. Counsel should not group all tasks performed in one day into a single billing, and each type of service should be listed with the corresponding specific time allotment. *In re Bishop*, 32 B.R. 302, 302 (Bankr.D.R. I.1983). The Court is otherwise unable to determine whether or not the time spent on a specific task was reasonable. Both appellees lumped services together as appears on the previously excerpted fee applications.

It is also well established that an attorney is not to be compensated at a rate applicable to legal work for those tasks which properly could have been performed by less costly nonlegal employees. *First Colonial, supra*, 544 F.2d at 1299. Among the items included in Attorney Bertrand's interim fee application are: 9/2/82—"Take inventory"; 9/9/82—"Take files to Myron; trip to Alpha to serve subpoena"; 9/10/82—"Trip to Houston for meeting re Brown Odom (6:15 A.M. to 7:45 P.M.)—13.-50 hours)"; 9/24/82 "Work on Brown Odom notice and mailing list (600 copies of notice and mailing)". Obviously, these examples indicate a substantial amount of time charged for essentially nonlegal work. Among the multitudinous improper charges made at a rate of $100.00 an hour is the noted 9/10/82 13.50 hour trip to Houston. While the Court cannot tell whether this trip was by air or by road, it is apparent that a legal rate was charged for the time en route in that it does not appear that the meeting itself lasted 13.50 hours. Appellee Van Norman also charged 13.50 hours for this particular trip, and nowhere in the record is there any showing that this trip to Houston was worth the $2700.00 in combined legal fees which the meeting cost the estate.

The same type of nonlegal work is also sought to be compensated for at a lawyer's rate by Attorney Van Norman, whose fee application includes such items as follow: 9/5/82 "Organize files and correspondence"; 9/24/82 "Assisted with Brown-Odom Notices and mailing lists". Plainly, such hours should not be compensated at the $100.00 an hour which was approved by the Bankruptcy Judge. In fact, fee requests for ministerial tasks performed by counsel such as "file organization" have been held to be totally noncompensable time. *In re Braswell Motor Freight Lines, Inc.*, 630 F.2d 348, 350–51 (5th Cir. 1980) ("compensation may be allowed an attorney only for professional services"); *In re Holtoff*, 55 B.R. 36 (Bankr.E.D.Ark. 1985); *In re Dee's Resortwear, Inc.*, 25 B.R. 591 (Bankr.M.D.Fla.1982).

Not only are the interim fee applications of appellees vague and inspecific, but the amount of time charged for particular tasks appears to be clearly excessive. Apart from such things as charging 13.50 hours for a trip to Houston for a single meeting, both fee applications contain substantial charges made for conferences and conversations. In short, substantial charges are made for "all talk" without any indication being made as to what the talk was about or what benefit it possibly served the estate.

Insofar as the value or benefits which appellees' work has been to the bankrupt estate, appellee Van Norman represented to this Court at the time of oral argument that it appeared to him that the creditors were *all* going to be paid one hundred cents on the dollar. This Court's review of the docket entries, however, reveals that this is far from the case. By order entered May 17, 1983, a compromise was approved whereby the trustee was authorized to pay six creditors "in full sat[isfaction] of their claims against [P]intail Beach property, 19% thereof as follows:

| | |
|---|---|
| [Claimant 1] | $ 1,882.67–$ 357.71 |
| [Claimant 2] | $26,387.00–$ 5,013.53 |
| [Claimant 3] | $ 9,990.86–$ 1,898.26 |
| [Claimant 4] | $12,981.00–$ 2,466.39 |

| | |
|---|---|
| [Claimant 5] | $76,108.82–$14,460.68 |
| [Claimant 6] | $35,356.49–$ 6,717.73. |

As such, it is difficult to see that the estate has been beneficially served from the ongoing quadruplicative efforts of the four trustees' attorneys.

The substantial cost to the estate of this quadruplication of effort is reflected in Attorney Van Norman's remark at oral argument: "If I sent my final bill in now, I wouldn't get paid all of it anyway because there's not that much money [in the debtor's estate]." If this is true, then the case should have been converted into a Chapter 7 liquidation long ago, as the creditors are obviously not going to be best benefited by the extreme erosion of estate assets due to the expense of having four attorneys participate in the management of the estate. Bankruptcy proceedings are intended to benefit the creditors and the estate, and *not* to benefit the attorneys. It seems difficult to perceive how the Bankruptcy Judge, as well as those attorneys supposedly acting in a fiduciary capacity to the estate, can justify paying creditors nineteen cents on the dollar while four attorneys have been awarded a grand total of $280,000.00 in interim fees.[7]

As to the *Johnson* factors set forth in *First Colonial,* it appears that appellees merely "parroted" these considerations. The fee application of each appellee contains the *exact* same generalized language addressing the *Johnson* factors. For example, each appellee stated as to the fourth *Johnson* factor: *"The preclusion of other employment by attorney due to acceptance of this case.* The applicant has a law practice in the Southwest Louisiana area. The acceptance of employment to represent the debtor precluded such other employment as may normally have been accepted by applicant." Absolutely no indication whatsoever is made as to what "other employment as may normally have been accepted" consisted of and no representation whatsoever is made as to any employment which the attorney did in fact have to turn away as a result of his work for the debt-

or's estate. As the Fifth Circuit Court of Appeals has explained:

> What we require is not a meaningless exercise in parroting and answering each of *Johnson's* twelve criteria, but some assurance that the court has arrived at a just compensation based upon appropriate standards. *Davis v. Fletcher,* 598 F.2d 469 (5th Cir.1979). *See also U.S. Golf Corp., supra,* 639 F.2d at 1206; *Copper Liquor, Inc. v. Adolph Coors Co.,* 624 F.2d 575, 582–83 (5th Cir.1980).

Not only do appellees' interim fee applications fail to address properly the *Johnson* factors, but it is quite apparent to this Court that the Bankruptcy Judge neither carefully examined the applications nor properly applied the appropriate standards before approving appellees' interim compensation.

There is no evidence that any of the *First Colonial/Johnson* factors were examined by the Bankruptcy Judge as no detailed findings were made on the record. The well established procedure for determining the reasonableness or appropriateness of the interim fees was not followed by the Bankruptcy Judge, who permitted appellees to make a mockery of the explicit requirements of the Bankruptcy Code and the Bankruptcy Rules, as is apparent from the foregoing analysis. This Court's examination of the appropriate standards clearly demonstrates that appellees have utterly failed to meet their burden of proof in establishing their right to compensation in either the bankruptcy court or in this Court. Certainly, in failing even properly to establish the propriety of their compensation under the rules set forth in *First Colonial,* appellees have failed to establish even a scintilla of evidence showing that this is such a rare or exceptional case as would justify nunc pro tunc authorization of their work for the debtor's estate at the direction of the trustee.

"There is an overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction," *Bank of Marin v. England,* 385 U.S. 99, 103, 87

---

7. See Note 2, *supra,* as to the interim fees received by the four attorneys.

S.Ct. 274, 277, 17 L.E.D.2d 197 (1966), and it is a cardinal maxim of equity jurisprudence that he who comes into equity must come with clean hands. *See, e.g.,* 30 C.J.S. *Equity* § 93, at p. 1006 (1965). Thus, not only the utter absence of any exceptional circumstance as required under *Triangle Chemical,* but also the appellees' disregard for the Bankruptcy Rules and the well established law of this Circuit on attorney compensation in bankruptcy, as is made evident in the foregoing analysis, leads this Court to no conclusion other than appellees absolutely fail to merit equitable relief by a nunc pro tunc order entitling them to be compensated for their purported work.

### VI. CONCLUSION

The statutory language of 11 U.S.C. § 327 requiring court approval *before* employment and only for a "specified special purpose" where the attorneys have previously represented the debtor is quite explicit, and strong reasons exist for not circumventing the Code's requirements. Even if appellees could establish sterling results of magnificent benefit to the estate, their entitlement to nunc pro tunc relief would be doubtful because of their generalized performance of the trustee's duties that is specifically prohibited under 11 U.S.C. § 327(e). *In re Impact Publications, Inc.,* 24 B.R. 980 (Bankr.Tex.1982). To hold otherwise would nullify the specific requirements of the Bankruptcy Code. In light of all these considerations, there is no need for this matter to be remanded to the bankruptcy court for further consideration. *Cf. Triangle Chemicals, supra,* 697 F.2d at 1282 (where the 5th Circuit remanded the case, citing the exceptional circumstance that an attorney, requesting nunc pro tunc designation as being attorney for the debtor-in-possession, "had performed services that had preserved at least some five to six hundred thousand dollars for the estate of the debtor. (*Triangle* then had assets of $1,100,000.00 and liabilities of $1,800,-000.00)." Appellees were afforded a hearing both before the bankruptcy court and this Court and they have obviously failed to show they are entitled to any award of fees as a matter of law.

It is therefore ORDERED that the Unsecured Creditor's Committee's objection to Van Norman's and Bertrand's claims for interim fees for the period of September 1, 1982 through October 31, 1982 be ALLOWED; and it is further ORDERED that the Bankruptcy Court's order entered March 19, 1986 be VACATED; and it is FURTHERMORE ORDERED that Van Norman's and Bertrand's fourth application for interim fees be disallowed and DENIED.