**In re George Robert Curtis HOLLOWAY, Jr., Debtor.**

**Rose Ann Roberts, Plaintiff,**

v.

**George Robert Curtis Holloway, Jr., Defendant.**

Bankruptcy No. 92–40285–S.
Adversary No. A92–4067.

United States Bankruptcy Court,
E.D. Texas,
Sherman Division.

Jan. 11, 2000.

Michael F. Pezzulli, Carol E. Farquar, Pezzulli & Assoc., Dallas, TX, for plaintiff.

Frank J. Wright, Hance Scarborough Wright, Dallas, TX, for defendant.

## OPINION

DONALD R. SHARP, Bankruptcy Judge.

NOW before the Court for consideration is the Application of Rose Ann Roberts for Attorneys' Fees. This opinion constitutes the Court's findings of fact and conclusions of law to the extent required by Fed. R.Bankr.Proc. 7052 and disposes of all issues before the Court.

### *FACTUAL AND PROCEDURAL BACKGROUND*

Rose Ann Roberts ("Plaintiff") and George Holloway ("the Debtor") were formerly married. Plaintiff's claim against the Debtor arises out an assignment of interest in the McKinney 282 Joint Venture Pursuant to an Agreement Incident To Divorce and Assignment of Interest In Profits, Losses, Distributions and Obligations ("Agreement"). The Debtor filed for bankruptcy on March 13, 1992[1], following Plaintiff's filing a suit in state court to recover money wrongfully taken by the Debtor upon the sale of real property covered by the Agreement. Plaintiff claimed proceeds from the sale of property awarded to her which should have been paid to her were misappropriated by the Debtor. Plaintiff filed her Complaint to Determine Dischargeability with respect to that debt and a trial was held before this Court which resulted in the entry of a Final Judgment finding the debt of $146,649.50 plus interest and attorneys fees non-dischargeable. The amount of the award of attorneys' fees was set at $100,000.00. The Debtor appealed the decision. The District Court upheld this Court's ruling regarding the dischargeability of the debt and the award of interest, but remanded the matter solely with respect to the award of attorneys' fees.[2] The District Court determined that the award of attorneys' fees required analysis of the *Johnson* factors as set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974).[3] The opinion recognizes that such an analysis was not possible given the insufficiency of the probative evidence and "sketchy cross examination". Further, the District Court made clear that the Bankruptcy Court was *not* obligated to reopen evidence on this issue for the reason that "Roberts failure to sustain the evidentiary burden of showing reasonableness the first time this issue was fully litigated does not entitle Roberts to an automatic second bite at the apple." Nonetheless, the Court acknowledged Plaintiff's good faith and left rehearing the matter to this Court's discretion. Thereafter, Plaintiff filed her Application for Attorneys' Fees. Not surprisingly, the

1. The Debtor received his discharge on July 16, 1992.

2. The Debtor appealed the dischargeability issue to the Fifth Circuit Court of appeals. The Fifth Circuit affirmed the District Court's judgment affirming this Court's ruling on the issue of dischargeability.

3. The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) the award in similar cases. 488 F.2d at 717–19.

Debtor objected.[4] The Application came on for hearing and at the conclusion of the hearing, the Court took the matter under advisement.

## RELIEF SOUGHT

The Application of Rose Ann Roberts for Attorneys' Fees (the "Application") seeks this Court's determination that the fees incurred on her behalf in this case are non-dischargeable debt. This Application is atypical to this Court insofar as the fees will not be paid out of the bankruptcy estate or effect any distribution to creditors, the case having been closed in 1995. The Application seeks this Court's approval of $174,989 in fees for 1,243.73 hours of services rendered on her behalf by Pezzulli & Associates, reimbursement of expenses incurred in performing such services in the amount of $13,127.00 plus additional attorneys' fees in connection with the preparation of the Application. The period covered extends from October, 1989 through the preparation of the Application and its proposed hearing. This period includes all of the original state court litigation, the appellate litigation and the bankruptcy litigation.

## DISCUSSION

 The Court has considered the records in this case, the application before the Court, the arguments of counsel, the testimony and credibility of witnesses and the evidence adduced at the hearing respecting the Application. Pursuant to 11 U.S.C. §§ 330 and 331, all professionals applying for fees must demonstrate that the services to be compensated were actual, reasonable and necessary. This Circuit uses the "lodestar method" to calculate attorneys' fees. *In the Matter of First Colonial Corp. of America*, 544 F.2d 1291, 1299 (5th Cir.), cert. denied, 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977), establishes the proper procedure for determining attorney fee awards in bankruptcy. Simply put, the Court must assess the value of the attorneys' services by first calculating the "lodestar." Generally, the lodestar is calculated by multiplying the number of hours reasonably expended by a reasonable hourly charge. *In re Lawler*, 807 F.2d 1207, 1211 (5th Cir.1987). Once the "lodestar" determination has been made, the Court must then analyze the attorneys' services in light of the factors set forth in *Johnson* and referred to above. Application of the *Johnson* factors is generally considered an adjustment of the rather mechanical "lodestar" calculation to tailor the fee award to the specific facts of the case under consideration. Finally, the court must explain the basis of its award. In doing so, the court must briefly describe its findings and explain how an analysis of the *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), factors led to its decision. *In re Allied Texas Investments, Inc.*, 1989 WL 265432 (Bkrtcy.N.D.Tex.). Each of the *Johnson* factors should be considered, but none are controlling. *Cobb v. Miller*, 818 F.2d 1227, 1232 (5th Cir.1987). The fee applicant bears the burden of proving that the *Johnson* factor adjustments as well as the number of hours and the hourly rate for which compensation is requested are reasonable. *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983).

 As stated hereinabove, the number of hours for which applicant seeks

---

4. One portion of the Debtor's argument was that the fees sought to be approved by Plaintiff failed to accurately reflect a reduction of $50,000. This element would be subsumed under the rubric "Nature and Length of the Professional Relationship with the Client" in a *Johnson* factor analysis. Counsel for the Debtor argued that Pezzulli & Associates may have written-off $50,000 of the fees accrued. Plaintiff identified the arrangement as one in which her counsel informed her that his gift to her would be that he would pursue the Debtor for that portion of her debt to the firm. Whether Pezzulli & Associates has forgiven a portion of Plaintiff's debt does not effect the outcome of this Court's determination as to whether the services such debt represents were performed or were reasonable and necessary.

compensation is 1,243.73. However, the Court may deduct for tasks that are not reasonable, duplicative or unnecessary. The Court will not allow compensation in instances where the services performed by the professional are in the nature of overhead or could be performed by a non-billing or lower billing professional. In the case before the Court, attorneys performed services that could have been delegated to lower charging firm members. For example, on 11/18/97 and 11/24/97 Ms. Farquar called the clerk's office regarding sending a record; also, on 7/28/97 she charges time for filling out a form. There were numerous telephone conferences billed without reference to subject matter. The Court has no evidence upon which it can find that the time expended during such conferences was reasonable or necessary. Accordingly, the Court must adjust any award with respect to these hours billed. Travel time was not billed at half the charges as is required in this district (see ⁵⁄₂₀ for example). Many time entries show "time lumping" which makes it difficult to ascertain if the time spent on certain tasks is reasonable.[5] There are numerous examples of interoffice conferences among members of the firm.[6] As a result of the foregoing irregularities in the Application, this Court is unable to ascertain the true number of hours necessary to calculate the "lodestar".

■ In addition, to calculate the "lodestar" the Court must have an hourly rate to factor into the equation. The Application states that Pezzulli & Associates' "average hourly rate" is $140.00. Average hourly rates are patently misleading.[7] In fact, the Application never gives this Court a true hourly rate for the professionals who provided the services.[8] All rates are shown as "average rates". To state that there is an "average rate" means that at times an attorney might charge $180./hour, i.e. an acceptable rate in this district—or even a lower amount—, but at other times, $220 or $240/hr., rates which would only be allowed in extraordinary circumstances in a bankruptcy case. Based upon the information in the Application, it is impossible to ascertain the hourly rates absent a calculation on each, individual time entry. Mr. Pezzulli recognized this flaw to some extent. He testified that "While the summary does not reflect the rate charged per attorney per month, it does reflect the total average rate for each attorney. The actual rate per month is simply calculated from the monthly statements. You can look at the time and the dollar amount and you know the precise amount. So, every-

5. The practice of time "lumping" has uniformly been condemned by courts because clumping makes it difficult to ascertain what charges were made for specific purposes. See *In re George Worthington Company*, 76 B.R. 605, 608 (Bankr.N.D.Ohio 1987); *In re NRG Resources, Inc.*, 64 B.R. 643, 654 (W.D.La.1986).

6. For example, 12/2/92 DAB & SPK, 11/4/92 CEF & GTM and CTM & SPK, 11/10 CEF & GTM, ¹¹⁄₁₂ SPK & GTM, 9/30/92 GTM & SPK and others.

7. The Court is not offended by the presentation of an "average" hourly rate. Acceptable fee applications frequently include an average, but support and clarify the method of calculating such rate. An acceptable Application discloses each attorney's hourly rate and status within the firm for each year in which such attorney performed services on the case. Absent detailed disclosure as required under the Code, the Court is unable to take into account normal fluctuations in attorney rates as a result of experience or promotion within the firm. It is not uncommon in a bankruptcy case for the Court to review a professional fee application spanning a period of years. An attorney performing services on a case for four years, three as an associate and one as a director, should not be allowed the director's hourly rate for all four years nor denied the increase if such increase is appropriate. To include paralegal hours in the calculation is an artifice that lowers a firm's "average" hourly rate and conceals attorney rates that may exceed amounts allowable in this District.

8. At trial Mr. Pezzulli testified that his hourly rate was $275/hr. He did not specify whether such rate was his rate at the time of trial or had been his rate throughout the period covered by the Application.

thing necessary to calculate that to go to the blended rate of $140 is before the Court." Moreover, *arguendo,* Pezzulli's "average" rate is $210.70, according to the Application, which is in excess of the amount usually allowed by this Court for a partner in a firm. Farquar's "average" rate is shown as $177.56—also in excess of the rate usually allowed by this Court for an associate. The other attorneys who billed time to the file have average rates less than the highest rate allowable by the Court for an associate; nonetheless, there is no record of the rate actually billed for their services. Regardless of the fact that there is no clear statement in the record of hourly rates except for Pezzulli's current hourly rate of $275./hour, which is higher than this Court will allow, Pezzulli and his expert witness, Vincent Steven Walkowiak, both testified that the rates were "reasonable".[9] Two of the ten paralegals who worked on the matter over the term of years were billed out at an "average" rate of $75/hour.[10] The rate of $75/hour is excessive for a paralegal in the field of bankruptcy in this District. Otherwise, it appears that the paralegals billed their time at $50/hour, a rate this Court would find acceptable, if such were an actual rate. The rate of $75/hour has also been billed for the services performed in this case by three law clerks.

The Application offers this Court no information whatsoever regarding these clerks and designates one by initials instead of by name. According to the testimony, these law clerks performed "spot research". As a result of insufficient information, this Court is unable to ascertain correct hourly rates with which to calculate the "lodestar".

In this circuit, creditors may recover their attorneys' fees in § 523 actions if they would have a contractual right to such attorneys' fees under state law. *Matter of Luce,* 960 F.2d 1277, 1286 (5th Cir.1992); *Matter of Jordan,* 927 F.2d 221, 227 (5th Cir.1991). Such a contractual right was found by this Court in this case in the Agreement. At this juncture Applicant has had two opportunities to appear before this Court to support an award of fees. Applicant has provided masterful argument justifying entitlement but insufficient evidence upon which this Court can quantify an award and calculate the "lodestar" prerequisite to the *Johnson* analysis mandated by the District Court. It has long been the opinion of this Court that it is not the burden of the Court or of the Debtor to disprove or examine the minutiae of a fee application once it has been demonstrated clearly that the description of the services is unreliable and the benefit incurred upon the estate as a result of the services provided or alleged to have been provided is dubious.

Further, Applicant seeks reimbursement of expenses incurred in performing such services in the amount of $13,127.00. No supporting documents, receipts, invoices or statements have been provided to support the expenses. Although copy charges appear to be appropriate at $0.20 each, there is a "miscellaneous" charge of $141.00 devoid of any explanation.

This Court is of the opinion that the amounts requested pursuant to the Application exceed the amounts normally awarded in similar cases. For example, Pezzulli & Associates seek an additional

---

**9.** In a *Johnson* factor analysis "Experience, Reputation, and Ability of Attorneys" bear upon the amount of the award. The attorneys who performed the majority of the legal services rendered on behalf of Plaintiff have moderate to high years of experience and good credentials. Mr. Pezzulli testified as to his own credentials and those of Ms. Farquar. The skill, expertise and reputations of the attorneys and paraprofessionals who performed services in this case on behalf of the Plaintiff has been adequate except in relation to the fee application process.

**10.** The number of professionals who worked on the file was a bone of contention raised in the Debtor's Objection. Given the number of years and diversity of courts before which the matter has been heard over the years, that number is not unreasonable.

$10,000 for services rendered in preparing the Application. Such an amount exceeds what this Court deems to be reasonable for the preparation of a fee application in a case of this proportion and given the irregularities of the Application specified hereinabove.

### CONCLUSION

The instant Application is before the Court, as the District Court characterized it, "in light of Roberts' apparent good faith". Roberts has been treated to her "second bite at the apple", but the evidence that was formerly lacking is now before us and it is dubious, irregular and inconsistent. The Court has not been provided adequate information upon which it can calculate the "lodestar". Absent this foundation, it is not possible for the Court to assess the value of the attorney's services. It is also impossible to apply a *Johnson*-factor analysis without a "lodestar" figure to adjust.[11] In view of this Court's inability to conduct a "lodestar" determination and a *Johnson* factor analysis based on accurate records, any award of attorney fees would be on exactly the same basis as the earlier award vacated by the District Court. That is, an assessment based on this Court's experience rather than the analysis required by the District Court's remand and the jurisprudence dealing with fee awards. Accordingly, the relief sought in Plaintiff's Application must

be denied. An order will be entered accordingly.

---

11. The Court is aware that elements of the *Johnson* analysis are incorporated into its discussion of the "lodestar" in the form of "customary fee", "time and labor required" and "awards in similar cases". "Amounts involved and results obtained" as well as "whether the fee was fixed or contingent" are evident upon a reading of the factual background. The Court will add briefly that it must disagree with the Applicant's assertion that the "significant number of hours spent demonstrates the difficulty and complex nature of the factual and legal questions involved in this case." This case has been contentious, but the legal issues have been straightforward and hardly unique. The facts were unambiguous. Misappropriation of funds is commonly seen in the State Courts and dischargeability is commonplace to the

Bankruptcy Court. However, defending the Debtor's numerous appeals has increased the costs to Plaintiff. An adjustment to the lodestar is not justified when the questions involved are no more difficult than questions in other, comparable bankruptcy cases and the results obtained are similar to those that might have been obtained from other local attorneys. *In re Property Company of America,* 110 B.R. 244 (Bkrtcy.N.D.Tex.1990). In short, while this case was contentious, it was not complex. There is no evidence before this Court that it was undesirable as it pertains to a *Johnson* analysis; indeed, the Application states that it was not undesirable. If there was a calculable "lodestar", these factors would mitigate against any upward adjustment.