**In re GINJI CORPORATION, a Nevada corporation, dba Aladdin Hotel & Casino, Debtor.**

**Bankruptcy No. BK S 89–02650–LBR.**

United States Bankruptcy Court, D. Nevada.

Aug. 22, 1990.

Gerald Gordon and William Noall, Gordon & Silver, Las Vegas, Nev., for debtor.

ORDER APPROVING IN PART AND DENYING IN PART APPLICATION FOR AWARD OF ATTORNEYS FEES FOR GORDON & SILVER, LTD.

LINDA B. RIEGLE, Bankruptcy Judge.

### FACTS

On August 28, 1989, Ginji Corporation, dba The Aladdin Hotel & Casino (The Aladdin) filed its chapter 11 bankruptcy petition. Gordon & Silver, Ltd. (G & S) was authorized to be employed as debtor's counsel pursuant to an order entered on September 1, 1989. On September 5, 1989 the Nevada Gaming Commission refused to extend the license of the debtor's shareholders but agreed to permit a trustee to operate the casino; accordingly, this Court appointed a trustee to run the hotel and casino. The Aladdin has since been operated by the trustee.

G & S's Application for employment, prepared by that law firm, lists varying rates for counsel's services. The Order approving their employment, also prepared by them, mirrors the language in the Application as to rates, with the addition of a final phrase regarding court approval. The Order reads as follows:

> ORDERED that Applicant be, and hereby is, authorized to employ the law firm of GORDON & SILVER, LTD., as its attorneys in all matters requiring the services of an attorney of law herein *at varying rates from $45.00 per hour for paralegals, $100 per hour for associates to $175.00 to $200.00 per hour for the services of a partner;* all subject to application and approval by this bankruptcy court pursuant to 11 U.S.C. § 330. (Emphasis added)

On January 9, 1990, G & S submitted to the Court an Application for Award of Interim Compensation, pursuant to § 330 of the Bankruptcy Code. This Application was for professional services rendered from July 31, 1989 to November 25, 1989 requesting $125,853.25 in professional fees and $8,124.33 for expenses. On February 22, 1990 a Supplement to this Application was submitted for services from November 26, 1989 to January 25, 1990 requesting

$36,900.50 for professional fees and $4,045.76 for expenses.[1] Total fees and expenses sought are $193,434.84. In its application, G & S sought approval to debit a retainer of approximately $75,000.00.

The Application and Supplement were opposed by the Office of the United States Trustee. The comments of the United States Trustee focused on the high nature of the rates billed; the format of the application being lengthy and difficult to read; lumping of entries; inadequate description of entries; no distinction between legal and non-legal work; multiple attorneys at conferences with no showing of benefit to the estate for the extra attorney's presence; and a lack of showing of benefit to the estate generally. The United States Trustee requested a narrative of the services from G & S. G & S did provide some additional information, but did not provide a detailed task analysis.

At the hearing on this matter, the Court allowed G & S fees of $100,000 and costs of $12,170.09 and granted permission to debit their retainer. The balance of the fee application was taken under submission.

The Application charges for various types of items including:

*Fees*

Court Appearance at American Coin Hearing
One Form of Action Rule research
Pre payment penalties research
File organization
Numerous miscellaneous phone calls
Phone calls to the media
Bankruptcy court appearances (including multiple attorneys at hearings)
Preparation of pleadings & other court documents
Gaming Board hearings (including multiple attorneys attending)
Other Legal research
Travel time
Preparation of Plan of Reorganization
General telephone calls

The Supplemental Application charges for these additional types of items.

*Fees*

Leasetec Motion to Compel Acceptance or Rejection of Contract
Research re Classification of Claims
Bell Atlantic Motion to enforce security agreement
Motion for Post Petition Financing
Deceleration of Bell's Debt (deacceleration)
Universal Distributing Motion
Sale of Stock v. Sale of Assets
Subordination
Penalties of DOT and Bell Loan
Due on Sale research
Potential sale of Hotel and Casino
Schedules

## ISSUE

What items in the Application are compensable pursuant to 11 U.S.C. § 330.

## DISCUSSION

### Standard

Before discussing the components of the Application before this Court, it is necessary to focus on the standards which are applicable to fee applications and the framework which, at least this Court believes, is necessary in order to analyze the application and determine the appropriate compensation.

Section 330(a)(1) of the Bankruptcy Code provides that the Court may award, from the estate:

(1) *reasonable* compensation for *actual, necessary services* rendered by such trustee, examiner, professional person, or attorney, as the case may be, and by any paraprofessional persons employed by such trustee, professional person, or attorney, as the case may be, based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable ser-

---

1. While attorneys often supplement the application without noticing all creditors, an application of this size violates the requirements of Bankruptcy Rule 2002(c)(2). Accordingly, no further supplements in excess of $5000 will be heard unless noticed in accordance with the Rule.

vices other than in a case under this title;
. . . .

11 U.S.C. § 330(a)(1) (emphasis added). The legislative history of this section states as follows:

> Section 330 authorizes compensation for services and reimbursement of expenses of officers of the estate. It also prescribes the standards on which the amount of compensation is to be determined. As noted above, the compensation allowable under this section is subject to the maximum set out in sections 326, 328, and 329. The compensation is to be reasonable, for actual necessary services rendered, based on the time, the nature, the extent, and the value of the services rendered, and on the cost of comparable services other than in a case under the bankruptcy code.

H. Rep. No. 595, 95th Cong., 1st Sess. 329–30 (Notes of Committee on the Judiciary) (1977), U.S.Code Cong. & Admin. News 1978, pp. 6285, 6286.

> Section 330(a) contains the standard of compensation adopted in H.R. 8200 as passed by the House rather than the contrary standard contained in the Senate amendment. Attorney's fees in bankruptcy cases can be quite large and should be closely examined by the court. However, bankruptcy legal services are entitled to command the same competency of counsel as other cases. In that light, the policy of this section is to compensate attorneys and other professionals serving in a case under title 11 at the same rate as the attorney or other professional would be compensated for performing comparable services other than in a case under title 11.

Legislative Statements of Sen. DeConcini, 124 Cong. Rec. S17,403, 17,408 (Daily ed. October 6, 1978).

 In arriving at the appropriate fee, this Court is to multiply a *reasonable* hourly rate by the number of hours *actually* and *reasonably* expended. *Burgess v. Klenske (In re Manoa Finance Co., Inc.),* 853 F.2d 687 (9th Cir.1988). Separate analysis of the oft-cited *Johnson* factors, *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974) (In the Ninth Circuit, *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67 (1975)), is of limited importance in the present application as most factors are in large measure subsumed in the calculation of the rate and hours. *See, Manoa Finance,* 853 F.2d at 691. Nor is the issue of a bonus ripe. *See, e.g., First Nat'l Bank of Chicago v. Comm. of Creditors (In re Powerline Oil Co.),* 71 B.R. 767 (9th Cir. BAP 1986).

 Counsel appears to suggest that the quoted legislative history is authority for the proposition that the rates and hours charged should be allowed unless they were not actually spent, and that the Court should not second guess counsel's expenditure of time. However, as § 330 provides, the Court may only award estate funds based upon reasonable compensation for actual, necessary services. This is nothing more, nor nothing less than is, or should be, demanded by any client, whether in bankruptcy or not. The only difference is that the Court has the unpleasant task of acting as the sharp-eyed controller. Commenting on the Court's duty to examine reasonableness in fee applications, the Supreme Court has said in a related context:

> The district court also should exclude from this initial fee calculation hours that were not "reasonably expended." ... Cases may be over staffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. *"In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's adversary* pursuant to statutory authority." (Emphasis added) (citations omitted)

*Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 1939–40, 76 L.Ed.2d 40 (1983). *See also, In re Pothoven,* 84 B.R.

579, 584–85 (Bankr.S.D.Iowa 1988); *In re Temple Retirement Community, Inc.*, 97 B.R. 333, 339 (Bankr.W.D.Tex.1989).

■ This chore cannot be lightly exercised because of the very fact that the client may have little concern over the amount of fees paid as the fees are being paid from assets which would be distributed in any case. Moreover, the beleaguered debtor may not wish to strain his relationship with his life-rope, his attorney. Finally, opposition from others may be tempered by the fact they too, expect to be paid from the estate assets. *See, In re Consolidated Bancshares, Inc.*, 785 F.2d 1249, 1255 (5th Cir.1986).

■ In exercising its role, the Court and the estate has the same right to an edited intelligible billing statement as does the attorney's non-bankruptcy client. Any review of the literature during the last decade reveals that control over the costs of representation is of prime concern to the business community and that, in response to that concern, attorneys have had to respond with detailed statements and reports. The days of "for professional services rendered: $10,000" are over. *See, e.g.*, Manley, *How to Control Legal Costs*, INC 115–16 (April 1987); Bahls, *Laying Down the Law on Legal Fees*, NATION'S BUSINESS 54–55 (Oct.1988); Quinley, *Risk Managers and Defense Lawyers*, RISK MANAGEMENT 18–20 (June 1989).

Bankruptcy Rule 2016 requires as much and the cases are legion which hold that "lumping" and mere short-hand descriptions will not suffice. Initially counsel in this case provided no narrative of the work performed but only a 41 page application in chronological order. No client, nor indeed any supervising attorney, can be expected to evaluate the work performed when presented in this manner. The narrative in response to the U.S. Trustee's objections at

least provided a framework for the various tasks performed. Finally, at the hearing the Court spent a great deal of time going over the application attempting to understand what was charged and why.

■ Accordingly, for work done after the entry of this order in which the application is expected to exceed $10,000, the Court will require task summaries.[2] Such summaries should include the task; e.g. *Leasetec* motion; a short description of the task; the work done by all those working on the matter; the time spent by each and a total of the fees charged; and a status of the results, e.g., settlement reached; evidentiary hearing set; motion won or lost. While, as noted, the time spent in preparing such summaries is compensable, the Court believes that if incorporated into the firm's routine practices such summaries can be accomplished at a minimal extra expense and can provide the offsetting salutary effect of permitting the supervising attorney to more effectively evaluate and prosecute the case. Hence, for example, a firm may sub-designate matters in a bankruptcy by different file numbers, eg. 6003–1, 6003–2 etc. Each week every attorney working on the case should dictate a short statement setting forth the work done on the various matters and its status. At the time a fee application is prepared, these reports can be compiled by a secretary or other non-professional and then reviewed by the billing partner in connection with reviewing the bill as submitted in the fee application.[3] In addition, vague and ambiguous entries will be disallowed.

It would also be helpful if the fee application included a short summary of the firm's billing practices and procedures so that the court can evaluate the expenses and fees. For example, what is the firm's practice concerning phone calls of less than a billing unit, including calls in which mes-

---

**2.** The $10,000 is, admittedly, arbitrary. Such a figure attempts to balance the extra cost in preparing applications which is compensable from the estate, *In re Nucorp Energy, Inc.*, 764 F.2d 655 (9th Cir.1985), with the need to adequately review bills.

**3.** The court in *Wildman* indicated that prior to performing the service the attorney should ask three questions about the value of the service to the estate. This case also suggests that keeping records by task ("task analysis") rather than by attorney better assists the court in evaluating those services. *In re Wildman*, 72 B.R. 700, 707, 709, 711–12 (Bankr.N.D.Ill.1987).

sages were left; are expenses billed at cost or at cost-plus; is travel time, local and nonlocal, billed and at what rate.

Reasonable Rate

■ Notwithstanding the Application and Order, G & S sought fees up to $225.00 per hour for partners; and from $75.00 to $140.00 per hour for associates. G & S urges the Court to amend the Order of employment nunc pro tunc to clarify a clerical error to provide for compensation of associates at the rate of $100.00 to $175.00 per hour. Recognizing that counsel is entitled to be compensated at a reasonable rate and noting that the associates billed at the higher rate have had bankruptcy training and experience, the Court will allow the application to be amended to allow compensation for associates from $100.00 to $140.00 per hour.

The issue of a "blended rate" has received increased attention and was argued here by G & S to justify the high rates overall and in particular for the partners. The court in *Powerline*, 71 B.R. at 772, held a "blended rate" was not excessive; thereby approving of that practice. The overall blended rate for the fee application before the Court is $159.53 at the rates G & S charged, not the rates as reduced by the Court.

■ The Court believes that the blended rate approach is more useful in reviewing the application as a whole rather than in justifying individual rates. That is, if the blended rate is reasonable in light of the nature and complexity of the case, then the Court will presume that the attorney performing the task is the one, from an economic standpoint, who should be performing the task. This avoids arguing over whether counsel should have used an experienced attorney at two times the rate rather than an inexperienced attorney for a lesser rate but more hours.

This is, however, only a presumption; hence if it appears that a senior attorney is routinely performing work which should be done by a junior, then it will be disallowed.

■ In light of the fact that the application and order limited the rate to $200 per hour and as counsel submitted no evidence to demonstrate the reasonableness of rates in excess of $175, the Court will limit rates to a maximum of $180.00 per hour for partners, without prejudice to prove that $200 is the appropriate rate at the final fee hearing. Counsel may also apply for a bonus, if warranted, in accordance with the standards set forth in *Powerline*.

■ Although discussed further in connection with specific items, the rates for partners or associates, because they are at the high end of the spectrum, should be deemed to include overhead and certain other expenses. *See, e.g., Nucorp*, 764 F.2d at 659, n. 5; *In re S.T.N. Enterprises, Inc.*, 70 B.R. 823, 844 (Bankr.D. Vt 1987); *Wildman*, 72 B.R. at 731.

With these parameters in mind, the specific issues raised by the fee application will be addressed. The applicant, G & S, has the burden of proof to show the reasonableness of the fees sought. *S.T.N. Enterp.* 70 B.R. at 832; *In re Yankton College*, 101 B.R. 151, 157 (Bankr.D.S.D. 1989). Except for the items specifically denied or reduced, the Court finds the fees sought to be reasonable.

Reasonable Hours

*1. Pre–Petition Services*

During the month preceding the filing of the debtor's petition, G & S amassed fees in excess of $46,000. Prior to the filing, G & S apparently applied $42,500.00 of its pre-petition retainer against such fees. *See In re McDonald Bros. Constr., Inc.*, 114 B.R. 989 (Bankr.N.D.Ill.E.D.1990) for a lengthy discussion of the troublesome retainer issue.

■ Despite the fact that a retainer was paid pre-petition and services rendered pre-petition, the Court has the power to examine such fees for reasonableness. 11 U.S.C. § 329.[4]

---

**4.** Because prepetition fees are not sought under § 330 as an administrative expense, *cf In re Yermakov*, 718 F.2d 1465 (9th Cir.1983), such fees are not as narrowly limited by the guidelines of such cases as *In re Four Star Terminals*, 42 B.R. 419 (Bankr.D.Alaska 1984). In *Four*

■ Unquestionably, the debtor-to-be faced a number of complex legal issues in a number of fields. However, the Court is concerned about the amount of time that was spent on issues which "might" arise in the case. If a sharp eye is not focused on evaluating these services, then there may be a temptation to load up fees. As the Court said in *In re Four Star Terminals:*

A Chapter 11 debtor is in need of its funds to effectuate its reorganization and should not be subjected to undue administrative expenses in the form of attorney's fees, particularly if the fees are generated by time spent researching and preparing for issues which may not arise. Such is particularly true where the time is spent pre-petition, and a number of events could intervene to make the time and effort wasted.... Unfortunately, there will also be those few attorneys who will load their time sheets with research and effort directed to possible actions which have an almost non-existent chance of occurring.

*Four Star Terminals,* 42 B.R. at 434.

The services and topics (prepetition), which fall in the "what if" category include: research on "one form of action;" research involving the powers of the gaming authorities to close the property—variously described in the time record as "105," and/or; "revocation of gaming as violation of 362;" "prepayment penalty;" "assignment of rents, issues and profits;" "cash collateral;" "assignment v. security interest;" and "hidden security devices." There have been no pleadings filed in this case addressing these issues. Nor has any action been brought by the debtor or any other party to object to Bell's claim or otherwise contest the items claimed by it. The research is therefore, at this stage, of limited value to the estate. Accordingly, the allowed amount of research (pre and post petition) for the "one form of action" research will be reduced by 30 hours. A

maximum of 20 hours is allowed for the "prepayment penalty" research. In light of the gaming uncertainties facing the debtor, all research regarding those issues is allowed, with the exception of attendance at the American Coin hearing. Despite counsel's explanations that attendance at this hearing in an unrelated case prior to the Aladdin filing was necessary to know this Court's attitude about 11 U.S.C. § 105, the Court does not find it reasonable to allow time for attending the entire hearing in this unrelated case. At that hearing relatively little time was spent in argument on any of the legal issues impacting on this case; rather the majority of the hearing was spent in presenting evidence. The Court believes that it would have been much more prudent for an attorney to have called the attorney's involved in the case for a synopsis of the Court's ruling and reaction to the issues presented. Accordingly, the court will disallow all but one (1) hour (a reasonable amount of time for such task).

### 2. *Research of "tangential" issues*

In addition to the "what if" issues discussed above, other "what if" issues were researched by G & S post petition, and in some cases, more research was done on issues researched prepetition. For example, counsel spent approximately 29 more hours researching prepayment penalties. Time expended researching issues which are only tangential is not compensable. *S.T.N. Enterp.,* 70 B.R. at 838. One of the rationales for allowing a higher billing rate is that the firm already has the expertise to address the major issues in a bankruptcy matter and can therefore sift out the less important and tangential issues. Also, a bankruptcy estate should not be billed for the education, general research and training of the firm's lawyers. *Id.*

While the Court recognizes the need to be immediately prepared to negotiate with

*Star Terminals* the court limited fees paid for pre-petition services to: 1. A reasonable amount of background research concerning the potential debtor's financial condition to determine whether or not the client should be advised to file a petition; 2. a reasonable amount of meet-ings with the client to obtain the necessary information to draft the petition, statements and schedules; and 3. a reasonable amount of hours for drafting the petition, statements and schedules.

the secured creditor, the need to effectively evaluate each side's position, and the ofttimes ephemeral nature of research of Nevada law, the Court believes that too much time was spent on research of these issues by debtor's counsel. The court will, however, only reduce the number of hours spent on the "one action" rule and "prepayment penalties" as research on the other issues is more reasonable. As indicated above, the research on the "one action rule" is reduced by 30 hours, and a maximum of 20 hours research for "prepayment penalties" is allowed. In addition, if counsel has not already done so, it should turn over to the trustee's attorney copies of its research including any cases that it has copied. In this manner, the estate will clearly receive the benefit of the research which if need be, can be pursued by the trustee's attorney or, at the trustee's direction, by G & S.

More specifically, the following issues were clearly tangential, and the time spent is either reduced or denied as indicated.

 G & S, through two partners, spent over 65 hours drafting a plan of reorganization and disclosure statement for this debtor. From the outset it was clear any plan in this case would have to be a liquidating one due to the nature of the debtor. Given that G & S and especially its senior attorney is very competent in this field, has experience in casino bankruptcies including liquidating plans, and that no plan was filed by the debtor, the amount charged is not reasonable.

G & S argues in its defense that much work was done drafting not the plan but proposed sale agreement. While this may ultimately be needed, certainly it is extremely tangential at this stage when there is no proposal for sale as yet.

G & S also argues that their plan was, in essence, embodied in the Bell Atlantic plan before this Court in April, 1990. However, that plan was a straight liquidation plan which was so distinctly biased in favor of that creditor that this Court found that it was not beneficial to the estate. The time spent will be reduced by $3,000.00.

A substantial amount of time was spent regarding an "Opposition to Motion of Bell Atlantic to enforce Security Agreement." The court is unable to locate any motion filed by Bell during the period in question or relating to the described issues. Accordingly these items will be disallowed.

 Time spent researching the deceleration issue on 12/20/89 will be disallowed as its benefits are too tangential to the estate and appear to be for the benefit of the insider-guarantors. On 12/22/89 JPS's 0.6 travel time entry and WMN's 0.4 review time will be disallowed as they too appear to benefit the insider and not the estate.

### 3. Role of the Debtor vis a vis Trustee Appointment

 Intertwined with the tangential aspect of the debtor's services is the fact that a trustee was appointed early in this case. Once the Trustee had been appointed and assumed the day to day operation of the hotel and casino, debtor's counsel's role should have subsided somewhat. However, G & S continued to take a very active role in researching, preparing and defending various motions. Indeed, G & S did not stop researching some of the "what if" issues, and some of the research related to the same prepetition issues. Moreover, in light of the fact that the debtor is a closely held corporation, it is unclear whose interests were and are left for debtor's counsel to represent. At least one court has held that once a trustee has been appointed the debtor and its counsel have no role and cannot receive compensation. *In re NRG Resources, Inc.*, 64 B.R. 643 (W.D.La.1986). However in light of the provisions of 11 U.S.C. § 330 which permit compensation to a debtor's attorney, the Court believes that the correct approach is not to disallow fees but to scrupulously inquire into such services so as to ascertain whether or not they were for the benefit of the estate or for some other interest.

 In this case, the Court fears that many services performed by G & S were duplicative of the trustee's counsel's efforts. Trustee's counsel was supportive of

the fees requested by debtor's counsel but acknowledges that in several instances work was performed by G & S without prior consultation with him. Before undertaking any task on behalf of the estate, G & S should first consult with trustee's counsel; alternatively a pre-arranged division of labor shall be arranged. The following specific duplicative efforts are denied.

 Almost two hours were spent by G & S in October regarding a Motion to Allow Administrative Claim brought by Cosmo Electric, Inc. This matter was handled by the trustee.

G & S spent over 16 hours researching and writing an opposition to a motion brought by Leastec, and approximately 11 hours on a motion brought by Universal Distributing. The trustee filed an opposition to both these motions. Such work was clearly duplicative and thus the Court will allow a total of five hours (two and one-half per motion) for time for G & S to co-ordinate with the trustee as to who was to perform this research and file an opposition.

### 4. *Vague entries or services*

 The original application contained several entries of simply "legal research," "conference," or "telephone call/conference". As such, these entries are not compensable as they are too vague and can be summarily denied. *See Four Star*, 42 B.R. at 435, n. 12; *S.T.N. Enterp.*, 70 B.R. at 836. However, in its Supplement, G & S added descriptions to most if not all of its entries. This should have been done from the outset and the Court presumes that G & S has not charged for making an unintelligible summary intelligible.[5] *In re C & J Oil Co., Inc.*, 81 B.R. 398, 403 (Bankr.W.D.Va.1987). Indeed, G & S finally supplied a cogent summary of services rendered in it Reply to the U.S.

Trustee's Objection filed on February 14, 1990.

### 5. *Multiple attorneys at court hearings and conferences*

 When the necessity for multiple attorneys at a hearing has not been shown, such expense is not reasonable. *In re Amatex Corp.*, 70 B.R. 624, 626 (Bankr.E.D. Penn.1985); *Pothoven*, 84 B.R. at 585. In this case there are numerous instances of multiple attorneys attending court hearings or conference when the necessity for the extra person is questionable. At the fee hearing G & S satisfactorily explained the necessity for three attorneys attending the Gaming Board hearing on September 5, 1989. The Court questions the need for two attorneys at the meeting in Washington, D.C. with counsel for Bell when counsel for the trustee and the trustee himself were present. If both attorneys attended the same meeting, the fees and expenses for one will be disallowed. However, if the attorneys attended separate discussions, then both will be allowed.

 In addition, the Court will disallow $350 for an internal conference for which JPS and GMG each billed 1.6 hours for a discussion apparently concerning the relative merits of an auctioneer versus a real estate agent. The court does not believe that the estate should be charged for both attorneys especially since the estate was charged $600 for a discussion lasting less than two hours.

### 6. *Non legal Services*

 While some cases hold that tasks such as telephone calls are ministerial task which should not be billed at an attorney's rate, *see Magna Mtg Corp. v. Jansen (In re Jansen)*, 47 B.R. 641, 643 (Bankr.D.Ariz. 1985), this court disagrees with such a broad statement. However, work which

---

5. While preparation for fee applications are compensable, this Court does not believe that such a rule extends to granting compensation for preparing an intelligible bill for services. The Ninth Circuit's rationale in *In re Nucorp*, 764 F.2d 655, was that counsel shall be compensated like their non-bankruptcy counterparts.

Hence, as detailed applications are required, compensation shall be granted for the *extra* effort. However, bankruptcy counsel should not be overcompensated and permitted to charge for items that a non-bankruptcy client is not charged for, such as preparation of the billing statement.

was done by an attorney which should have been done by a paralegal or non-professional should be billed at the lower rate.

■■■ The estate should not be billed an attorney's rate for clipping newspapers, faxing or photocopying and filing documents. These items will be disallowed. In addition, G & S charged work done by a secretary for preparation of the matrix and the initial mailing at a paralegal rate. The typing and actual preparation is secretarial work which is to be included in overhead. However, even though the secretary in question is not a paralegal, the court recognizes the experience of the secretary in question and will allow one (1) hour, not 8, of such time at paralegal rate for the supervisory factor required to ensure such work is done correctly.

■■■ The Court will allow calls to the media at the attorney rates charged in recognition of the public nature of this case and the need to ensure that the media had a correct understanding of what was happening. There are several entries described as attorney reviewing files, organizing the file and collecting research. The Court will accept G & S's explanation that legal analysis was a part of such organization.

Attorney perusal of newspaper clippings are clearly not legal services and are of questionable benefit to the estate and should not be compensated as such.

■■■ In addition, there are entries indicating an attorney filed court documents. Filing documents is not a legal service, *Amatex*, 70 B.R. at 627, and such services are disallowed.

### 7. *Travel time*

■■■ Many of the court appearances by G & S are billed in excess of the actual time in court. At the fee application hearing, G & S indicated that it takes from 15–25 minutes to get from their office to court, and that it is their practice to bill from the second they leave the office to the second they return. Thus travel time is included in the court appearance time. For example, the estate was billed one hour for a hearing which was to commence at 10:30 a.m., actually commenced at 10:41 a.m., and ended at 10:44 a.m. Other hearings lasted 15 minutes and the estate was charged one and one-half hours. G & S argued that this is appropriate because the attorney is often thinking about the hearing while traveling. However, this is a slippery slope argument. If a court allows compensation for this, then ultimately shower time will be compensable.

G & S also argues that to not allow G & S to bill for this time is a penalty, as it establishes an unfair boundary in the growing Las Vegas metropolitan area. G & S admits that the case law in this area varies, from not compensating such time at all, to compensating it at lesser rates.

While there is merit to G & S's argument, the Court rejects billing at full attorney rates for more than a total of ½ hour for travel to and from court. In Las Vegas the Federal Courthouse is situated within five minutes of a number of office buildings including G & S's former suites. Secondly, as the time spent is apparently not monitored, it is too difficult for the Court to ascertain if the travel time billed was spent in traffic or through the drive-in window at McDonalds. Finally, it just does not seem equitable that the estate should pay the same amount to an attorney who spends an hour slaving over a brief and another for driving to and from his office. As the court in *S.T.N. Enterp.* recognized, travel time to the courthouse beyond a minimal time should be included in overhead. *S.T.N. Enterp.*, 70 B.R. at 837, 844.

According to the court's record, the hearing on 11/30/89 for which 1 and ½ hours was billed was to have commenced at 9:30; commenced at 9:37 and lasted until 9:53. Similarly the hearing set for 12/1/89 for which one hour was billed lasted fifteen minutes and started at its scheduled time. As discussed above, only ½ hour total will be allowed for travel to and from each hearing.

■■■ Out of state travel time will be allowed for necessary attorneys at half the usual rate. However, no travel time will

be permitted for the meeting in Los Angeles with the insider's attorney on 12/06/89. The court does not believe it appropriate to use estate funds so that the debtor's attorney can travel to meet with the insider's attorney; rather the Yasudas' attorney should have come to Las Vegas. However, the time spent in the meeting and expenses will be allowed.

8. *Expenses*

██ Actual and necessary expenses are also compensable pursuant to § 330. Such expenses must not be part of the ordinary operating expenses of the law practice. Ordinary expenses are overhead, which includes: rent, utilities, secretarial time, runner/messenger time, insurance and general office charges which are built into the attorney's billing rate. These are all charges that are incurred for any client, not this particular client, and are therefore overhead. *S.T.N. Enterp.*, 70 B.R. at 844; *Pothoven*, 84 B.R. at 586. G & S charges for an in-house runner/messenger. These items are denied.

██ Expenses which are compensable are those fronted by the attorney or law firm on behalf of a particular client. These expenses can only be charged to the bankruptcy estate at the cost to the attorney or law firm. The court will not allow law firms to use such items as a profit-making center. Examples of such expenses are: computer research, long distance telephone calls, fax machine charges, postage, federal express, photocopying charges, secretarial overtime. This does not include local meals.

## CONCLUSION AND ORDER

IT IS HEREBY ORDERED THAT: The items enumerated above are denied and the balance of the Application and Supplement is approved. Gordon & Silver is directed to prepare a compilation of the allowed sums and submit the appropriate order for allowance of payment.