**In re PRO–SNAX DISTRIBUTORS, INC., Debtor.**

**Bankruptcy No. 395–34918 RCM–7.**

United States Bankruptcy Court, N.D. Texas, Dallas Division.

Nov. 20, 1996.

Van Oliver, Dallas, Texas, for Debtor.

J. Maxwell Tucker, Dallas, Texas, for petitioning creditors.

Michael J. Quilling, Trustee, Dallas, Texas.

### MEMORANDUM OPINION

ROBERT McGUIRE, Chief Judge.

This matter comes before the Court on a motion of Mission Foods/Fiesta Jimenez, a

division of Gruma, Inc., Family Snacks, Incorporated d/b/a Guy's Foods, and Guiltless Gourmet ("Petitioning Creditors" or "Creditors") for reconsideration of an order previously entered that awarded compensation to the debtor's attorney for work done both before and after the appointment of a Chapter 11 trustee. The Court concludes, for the reasons below, that this motion is not well taken, and is therefore denied. Following are the Court's findings of fact and conclusions of law pursuant to Fed.R.Bankr.P. 7052.

### Background

On August 10, 1995, an involuntary petition under Chapter 7 was filed against Pro–Snax Distributors, Inc. ("Pro–Snax" or "Debtor") by Petitioning Creditors, and an interim trustee was ordered on August 31, 1995.

While the case was in an involuntary stage, and on or about August 31, 1995, an injunction, brought by the Petitioning Creditors, was entered against the Debtor to prohibit it from making a proposed settlement with distribution to its creditors before any plan had been filed or an order for relief had been entered.

On September 13, 1995, the Debtor consented to relief under title 11, and the case was converted to Chapter 11. Later, on October 16, 1995, the Court, after denying Petitioning Creditors' motion to convert to Chapter 7, directed that a Chapter 11 trustee be appointed. By October 16, 1995, the Debtor had filed a plan and disclosure statement. An amended plan and disclosure statement were filed on November 29, 1995, and after some skirmishes, Debtor's plan came on for confirmation on February 13, 1996. Confirmation was denied. The Petitioning Creditors' conversion motion was heard immediately thereafter and granted, and by order entered February 20, 1996, the case was converted to Chapter 7.

Employment of Andrews & Kurth, L.L.P. ("A & K"), as counsel for the debtor-in-possession, was authorized *nunc pro tunc.* On July 1, 1996, A & K filed an application for compensation and reimbursement ("fee application") for the period commencing September 13, 1995 through May 31, 1996, seeking approval of $44,368 in fees [1] and $10,725.37 in expenses.

Petitioning Creditors filed an objection to A & K's fee application. On September 16, 1996, a hearing was held, and by an order dated September 30, 1996, the Court awarded fees in the reduced amount of $30,000 and expenses in the reduced amount of $7,500, against which there was a $10,000 credit, leaving a total balance due of $27,500 for fees and expenses.

At the hearing on September 16, 1996, the Court made extensive findings and conclusions on the record, going through the background of the case and the factors in *In re First Colonial Corp. of America,* 544 F.2d 1291 (5th Cir.), *cert. denied,* 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977). Such findings and conclusions are adopted and incorporated herein by reference. As further background, it should be noted that Debtor's plan was a liquidating plan for a non-ongoing business. The plan provided alternative opportunities for a creditor to either cash out and/or participate in future possible litigation benefits. If the plan had been confirmed, the estate would have been concluded in six months from the filing of this case, which appears to be a faster time frame than bringing it to conclusion in a straight Chapter 7 liquidation. Further, while the trustee fully

---

1. An analysis by date and amount of the fees requested in the application yields the following breakdown:
   1. $561 was requested for work done prior to the involuntary petition being filed on August 10, 1995.
   2. $7,436.50 was requested for work done after the involuntary petition was filed, but before the case was converted to Chapter 11 on September 13, 1995.
   3. $5,049.50 was requested for work done after the case was converted to Chapter 11, but

   before a Chapter 11 trustee was appointed on October 16, 1995.
   4. $29,633 was requested for work done after the Chapter 11 trustee was appointed, but before the case was converted to Chapter 7 on February 20, 1996. This amount represents over 66% of the total fees requested.
   5. $1,688 was requested for work done after the case was converted to Chapter 7. These are fees in connection with preparing the fee application.

protected the assets of the estate during all pertinent times, the trustee basically adopted the position of being a stakeholder until conversion of the case to Chapter 7. Except for the large Petitioning Creditors' claims, which opposed the Debtor's plan throughout, it appeared that there was some support for the approaches in the Debtor's plan until confirmation was denied.

### Issue

■ The issue before the Court is to what extent, if any, can an attorney employed as counsel for the debtor-in-possession be awarded compensation for work done after the appointment of a Chapter 11 trustee.

The Petitioning Creditors argue that no fees should be awarded from the estate to A & K for work done after the appointment of the Chapter 11 trustee on October 16, 1995. Their argument is primarily based on a narrow reading of § 330(a)(1), as amended in 1994.[2] Under § 503(b)(2), fees awarded under § 330 are given administrative priority. Section 330 allows the court to award fees to "a trustee, an examiner, a professional person employed under section 327 or 1103."[3] Since A & K is neither a trustee nor an examiner, the Creditors contend that A & K can be awarded fees only as a professional employed under § 327.[4] The Creditors admit that Pro–Snax, as debtor-in-possession from September 13, 1995 to October 16, 1995, had the power to employ A & K under § 327. They argue, however, that when the Chapter 11 trustee was appointed on October 16, 1995, Debtor lost its status as debtor-in-possession, and, thus, there is no administrative priority under § 503(b)(2).

Petitioning Creditors rely principally on two cases to support their argument—*In re*

*NRG Resources, Inc.,* 64 B.R. 643 (W.D.La. 1986) and *In re Friedland,* 182 B.R. 576 (Bankr.D.Colo.1995). In *NRG,* two attorneys were authorized to be employed by the debtor-in-possession. Subsequently, a trustee was appointed, and the trustee was authorized to employ himself, as well as another attorney, to represent the trustee. Despite the employment of two different attorneys to represent the trustee, the two attorneys previously employed to represent the debtor-in-possession continued to do work for the trustee for which they sought compensation from the estate. The court denied them any compensation for work done after the appointment of the trustee.

The court did not base its decision on the fact that the work was done after the appointment of the trustee, but rather the decision turned on the fact that the work the attorneys performed was done at the direction of the trustee, as attorneys for the trustee. However, since the two attorneys were not authorized to be employed by the trustee under § 327, the court denied them any compensation for work done for the trustee. *See NRG,* 64 B.R. at 648–49. The court further refused to allow *nunc pro tunc* authorization of their employment as attorneys for the trustee because the circumstances did not warrant such relief, especially in light of the Bankruptcy Code's prohibition against the debtor's attorneys representing the estate after the appointment of a trustee. *Id.* at 650.

The court denied the attorneys compensation because they were acting as attorneys for the trustee without authorization to be employed by the trustee. Moreover, the court did not hold that debtor's attorney is always prohibited from receiving compensa-

---

**2.** Section 330 was amended in 1994 by the Bankruptcy Reform Act, Pub.L. No. 103–394 ("1994 Amendments"). The 1994 Amendments to § 330 apply only to cases commenced on or after the date of enactment, October 22, 1994. Thus, § 330, as amended, is applicable to this case.

**3.** Prior to the 1994 amendments, § 330(a) also included "the debtor's attorney." It now states in pertinent part:

(a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court

may award to a trustee, an examiner, a professional person employed under section 327 or 1103—

(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and

(B) reimbursement for actual, necessary expenses.

**4.** Section 1103 deals with the powers and duties of committees which is not applicable here.

tion from the estate for work done after the appointment of a trustee. The court stated: "Of course, there nevertheless are services for which a debtor's attorney is entitled to compensation, such as that received for filing the petition, so long as they are rendered in the capacity of debtor's attorney and do not continue well beyond the time of the trustee's appointment." *Id.* at 648.

In *Friedland,* counsel for the Chapter 7 debtor sought to draw down on a retainer received prepetition for services rendered both pre and postpetition. The court allowed counsel to be paid from the retainer only for prepetition services and expenses. The court concluded that the 1994 Amendments precluded awarding compensation from the estate to debtor's counsel in a Chapter 7 for postpetition services. The Creditors contend that the rationale of *Friedland,* a Chapter 7 case, also applies to this case when it was in a Chapter 11 mode.

The 1994 Amendments omitted the term "debtor's attorney" from § 330(a) and added § 330(a)(4)(B), which allows an attorney for a Chapter 12 or 13 debtor to receive compensation from the estate for representing the debtor, even if those services are rendered post-petition. The *Friedland* court held that the plain meaning of these amendments was to deny compensation to counsel for debtors in Chapter 7 for work done post-petition. The court went on to support this holding, which treats Chapter 7 differently than Chapters 12 and 13, by distinguishing Chapter 7 from the other Chapters. The court distinguished the Chapters by noting that the assets and interests of a Chapter 7 debtor are distinctly different from a Chapter 7 estate, whereas, in the other Chapters the assets and interests of the debtor and the estate are much more closely aligned. Thus, in theory, a Chapter 7 debtor's attorney can be paid from the debtor's post-petition earnings which are not part of the estate. Furthermore, the duties of a debtor in the other Chapters are broader than the duties of a Chapter 7 debtor, e.g. in the other Chapters, the debtor works toward confirming a plan of reorganization, whereas in a Chapter 7 the trustee works toward liquidation. Thus, debtors in other Chapters have greater need of representation than a Chapter 7 debtor, and allowing attorneys to be compensated from the estate ensures that counsel will be available to represent the debtors in these other Chapters in carrying out their broader duties.

■ Some of the arguments used by the *Friedland* court to distinguish Chapter 7 from Chapters 12 and 13 can also be used to distinguish Chapter 11 from Chapter 7, and hence *Friedland* from the case at bar. There are duties of a Chapter 11 debtor that necessitate the work of an attorney even after a Chapter 11 trustee has been appointed, e.g. representation at the 341 meeting (§ 343), and, if appropriate, prosecuting a plan of reorganization under § 1121(c), and cooperating with (§ 521(3)) a trustee in performance of the trustee's duties.[5] The rationale in *Friedland,* if extended to the case at bar, would prevent a debtor's attorney from being compensated from the estate after the appointment of a trustee, thus effectively precluding a debtor from the representation of counsel in carrying out the duties described above.

The "plain meaning" seen by the court in *Friedland* is not so obvious in a Chapter 11 case, especially in light of the fact recognized by that court that there is a dearth of legislative history or other outside guidance to support its holding or the extension of its holding to Chapter 11. The Supreme Court, noting that Congress does not write on a clean slate, has expressed reluctance "to accept arguments that would interpret the Code, however vague the particular language under consideration might be, to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history." *Dewsnup v. Timm,* 502 U.S. 410, 419, 112 S.Ct. 773, 779, 116 L.Ed.2d 903 (1992); *see also In re Rash,* 90 F.3d 1036, 1050 n.18 (5th Cir.1996) (en banc). The *Friedland* court recognized the absence of

---

5. When a trustee is appointed, the debtor loses the right to run itself. *Matter of Cajun Elec. Power Co-op., Inc.,* 69 F.3d 746, 749 (5th Cir. 1995), *modified on other grounds,* 74 F.3d 599, but it still has standing to appeal the improper appointment of a Chapter 11 trustee (*Id.* at 749), its rights under § 1121(c), and duty to appear at a § 341 meeting.

any legislative history on the 1994 Amendments in question, *Friedland,* 182 B.R. at 578. The plain meaning recognized by that court and the Creditor's argued extension of it to the case at bar is contrary to the preexisting majority rule on this point, recognizing that the debtor's attorney was listed in § 330(a) before it was amended. *See In re Spanjer Bros., Inc.,* 191 B.R. 738, 759–60 (Bankr.N.D.Ill.1996); *In re Melp, Ltd.,* 179 B.R. 636, 639–40 (E.D.Mo.1995); *In re Swansea Consol. Resources, Inc.,* 155 B.R. 28, 37–8 (Bankr.D.R.I.1993); *In re Xebec,* 147 B.R. 518, 522–24 (9th Cir. BAP 1992); *In re East Peoria Hotel Corp.,* 145 B.R. 956, 964 (Bankr.C.D.Ill.1991); *In re Sugarman,* 137 B.R. 391, 392–3 (Bankr.S.D.Cal.1992); *In re TS Indus., Inc.,* 125 B.R. 638, 642–4 (Bankr. D.Utah 1991); *In re Ginji Corp.,* 117 B.R. 983, 992 (Bankr.D.Nev.1990).

One court has refused to follow *Friedland* in concluding that the 1994 Amendments implicitly repealed prior law. *In re Grossman,* 1996 WL 389324, at *4 n. 1 (Bankr.E.D.Pa. 1996). *But see In re Fassinger,* 191 B.R. 864 (Bankr.D.Or.1996) (a Chapter 7 case) and *In re Kinnemore,* 181 B.R. 520 (Bankr.D.Idaho 1995) (a Chapter 7 case). *Collier* has stated that if the 1994 Amendments discussed above are interpreted as the *Friedland* court did and extended as the Creditors now urge, then this interpretation would represent a fundamental change in the law that is clearly unintended and extremely unlikely. 2 *Collier on Bankruptcy* ¶ 330.01, at 330–8, 9 (15th ed. 1996). Even the *NRG* court recognized that compensation can be awarded in certain instances after the appointment of a trustee. *See NRG,* 64 B.R. at 648. Courts that have allowed debtor's attorney's fees, after a trustee has been appointed, do not give carte blanche approval for allowing an attorney to continue working for the debtor and be compensated from the estate for long periods of time after the appointment of a trustee in Chapter 11. Rather, a test has evolved to determine when an attorney should be allowed compensation from the estate for work done after the appointment of a trustee. *See, e.g., Spanjer,* 191 B.R. at 759 (citing *Xebec,* 147 B.R. at 523–24).

Most of the cases cited above require that there be some benefit to the estate from the work done after the appointment of a trustee in order for the attorney to be compensated. The courts have considered several factors when assessing the benefit to the estate: (1) whether the actions of the debtor's attorney duplicated the duties of the trustee or trustee's counsel under § 1106; (2) whether the services have in fact, obstructed or impeded the administration of the estate; and (3) whether the actions of the debtor's attorney are consistent with the debtor's duties under § 521. Section 330(a)(4)(A), now reading as follows, appears in essence to adopt some of such factors:

> (4)(A) Except as provided in subparagraph (B), the court shall not allow compensation for—
>
> > (i) unnecessary duplication of services; or
> >
> > (ii) services that were not—
> >
> > > (I) reasonably likely to benefit the debtor's estate; or
> > >
> > > (II) necessary to the administration of the case.

In the case at bar, the Court announced its lengthy findings of fact and conclusions of law from the bench. The Court found that the work done by A & K partially benefitted the estate in the area of liquidation of inventory, business operations, case administration, claims objections, attempted settlement, disclosure statement, and plan prosecution. Debtor's attorneys cannot guarantee success. *Xebec,* 147 B.R. at 524. The *Spanjer* court, 191 B.R. at 757, stated it thusly: "[I]f there was a reasonable chance of success which outweighed the cost in pursuing the action, then fees relating thereto are compensable." At the hearing on September 16, 1996, this Court stated, in essence:

> Recognizing that a Chapter 11 liquidating plan can be a valid plan, a common sense rule has to come into effect. Where a trustee has been appointed, the time and costs of prosecuting a liquidating plan should not exceed the comparable results and swiftness that would normally be accomplished by a straight Chapter 7 liquidation. There has to be a continuing cost-benefit analysis as the case progresses.

Based on these findings and others, the court allowed fees in the reduced amount of $30,000.00 and expenses in the reduced amount of $7500.00. In light of the factors enumerated above and made on the record on September 16, 1996, the Petitioning Creditors' motion for reconsideration is denied.[6]

---

**6.** Petitioning Creditors complain of their own expense, but filed no § 503(b)(3)(A) application, which would have given them limited reimbursement.