In re PRO–SNAX DISTRIBUTORS, INC., Debtor.

FAMILY SNACKS, INC. d/b/a Guy's Foods, et al., Appellants,

v.

ANDREWS & KURTH, L.L.P., Appellee.

Bankruptcy No. 395–34918–RCM–7. Civil Action No. 3:96–CV–3444–G.

United States District Court, N.D. Texas, Dallas Division.

Sept. 4, 1997.

J. Maxwell Tucker, Winstead Sechrest & Minick, P.C., Dallas, TX, for Appellants.

J. Van Oliver, Andrews & Kurth, L.L.P., Dallas, TX, for Appellee.

### MEMORANDUM ORDER

FISH, District Judge.

This appeal from the bankruptcy court presents a single issue: can counsel for the debtor be compensated, from assets of the estate, for services rendered after the appointment of a trustee? The bankruptcy court, acknowledging that generally the an-swer is no, nevertheless decided that this case was exceptional, and made an award. *In re Pro–Snax Distributors, Inc.,* 204 B.R. 492 (Bankr.N.D.Tex.1996). The general creditors appeal. Although the matter is not free from doubt, this court concludes that the bankruptcy court was in error and reverses its decision.

### I. BACKGROUND

The factual background is correctly stated in the opinion of the bankruptcy court, *Pro–Snax Distributors,* 204 B.R. at 493–94, and will not be repeated here in any detail. A brief summary is in order, however, to bring the legal issue into focus.

This bankruptcy began when several general creditors (appellants here) filed an involuntary petition under chapter 7. Approximately one month later, the debtor consented to relief under Chapter 11, and the case was converted to Chapter 11. Barely another month went by before the court appointed a Chapter 11 trustee. Although the debtor proposed a plan of reorganization some months later, it was unable to obtain confirmation of a plan. The case was thereupon converted, upon motion of the creditors, to a Chapter 7 case.

The bankruptcy court authorized the employment *nunc pro tunc* of the appellee Andrews & Kurth, L.L.P. ("A & K") as counsel for the debtor in possession, 204 B.R. at 493, and A & K applied for fees of $44,368 and expenses of $10,725.37. Following an objection by the creditors on which a hearing was held, the bankruptcy court made an award to A & K of $30,000 in fees and $7,500 in expenses. This appeal resulted.

### II. STANDARD OF REVIEW

In reviewing the decision of the bankruptcy court, this court functions as an appellate court and applies the same standards of review generally applied in federal court appeals. *Matter of Webb,* 954 F.2d 1102, 1103–04 (5th Cir.1992); *Matter of Coston,* 991 F.2d 257, 261 n. 3 (5th Cir.1993) (en banc) (citing *Matter of Hipp, Inc.,* 895 F.2d 1503, 1517 (5th Cir.1990)). Conclusions of law are reviewed *de novo. Matter of Herby's*

*Foods,* 2 F.3d 128, 131 (5th Cir.1993). Findings of fact, on the other hand, whether based on oral or documentary evidence, are not to be set aside unless clearly erroneous, and due regard must be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses. Bankruptcy Rule 8013; *Herby's Foods, Inc.,* 2 F.3d at 130–31.

However, if the bankruptcy court misapprehends the governing legal standard in making a factual finding, that finding loses the insulation of the "clearly erroneous" rule. *Armco, Inc. v. Armco Burglar Alarm Co., Inc.,* 693 F.2d 1155, 1162 (5th Cir.1982); see also *Matter of Coston,* 991 F.2d at 261 n. 3; *Fuji Photo Film Company, Inc. v. Shinohara Shoji Kabushiki Kaisha,* 754 F.2d 591, 595 n. 4 (5th Cir.1985). Thus, although the bankruptcy judge has " 'broad discretion in determining' appropriate attorneys' fees in bankruptcy proceedings," an award of such fees will be reversed "where that discretion is abused by 'failing to apply proper legal standards ... or by basing the award upon findings of fact that are clearly erroneous.' " *Matter of Braswell Motor Freight Lines, Inc.,* 630 F.2d 348, 350 (5th Cir.1980) (quoting *Matter of First Colonial Corporation of America,* 544 F.2d 1291, 1298 (5th Cir.), *cert. denied,* 431 U.S. 904 (1977)).

## III. ANALYSIS

### A. The "American Rule" Generally Prohibits Fee Shifting

The "American Rule" with respect to attorney fees is that each party must bear its own litigation expenses, unless a statute authorizes the shifting of those expenses to another party. A corollary of the American Rule, therefore, is that each party in civil litigation usually must bear its own counsel fees. *E.g., Alyeska Pipeline Service Company v. Wilderness Society,* 421 U.S. 240, 247, 269, 95 S.Ct. 1612, 1627, 44 L.Ed.2d 141 (1975) ("It appears to us that the [departure from the American Rule] suggested here ... would make major inroads on a policy matter that Congress has reserved for itself."); *Rogers v. Air Line Pilots Association, International,* 988 F.2d 607, 615 (5th Cir.1993) ("Under the 'American rule' successful litigants are generally not entitled to recover attorney's fees from the losing party, except where (1) the losing party is found to have pursued the litigation in bad faith, (2) the fee award would spread the cost of the lawsuit among members of a class who benefited from the litigation, or (3) the fees are a proper element of damages.") (citation and footnote omitted).

The American Rule applies in bankruptcy proceedings. See *In re Acequia, Inc.,* 34 F.3d 800, 819 (9th Cir.1994); *Matter of Love,* 577 F.2d 344, 351–52 (5th Cir.1978); *In re County of Orange,* 179 B.R. 195, 202 (Bankr.C.D.Cal.1995) ("The American rule ordinarily applies to bankruptcy proceedings."). Exceptions to the American Rule are narrowly construed and generally must be authorized by statute. *Richardson v. Alaska Airlines, Inc.,* 750 F.2d 763, 765 (9th Cir.1984); see *Key Tronic Corporation v. United States,* 511 U.S. 809, 814, 114 S.Ct. 1960, 1965, 128 L.Ed.2d 797 (1994) ("Our cases establish that attorney's fees generally are not a recoverable cost of litigation 'absent explicit congressional authorization' ") (citation omitted); *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 533, 114 S.Ct. 1023, 1033, 127 L.Ed.2d 455 (1994) ("it is the general rule in this country that *unless Congress provides otherwise,* parties are to bear their own attorney's fees") (emphasis added) (citation omitted). See also *Matter of W.T. Grant Company,* 85 B.R. 250, 265 (Bankr.S.D.N.Y. 1988) ("in the instant case there is no statutory authorization for fees to bring the controversy within that narrow exception to the American Rule"), *aff'd in part and rev'd in part,* 119 B.R. 898 (S.D.N.Y.1990), *aff'd,* 935 F.2d 1277 (2d Cir.1991) (table).

### B. Does The Bankruptcy Code Authorize A & K's Fees?

Section 503 of the Bankruptcy Code creates an exception to the American Rule in bankruptcy cases by shifting certain expenses of litigation to the general creditors. This is done by permitting such expenses (including attorney fees) to be paid—as an "administrative expense" from the assets of the bankruptcy estate—ahead of the

general creditors.[1] The fact that the claims of general creditors are subordinate to the payment of such administrative expenses means that the amount of such expenses is important to those creditors, as it reduces the funds available to pay their claims. See *In re Hooker Investments, Inc.*, 188 B.R. 117, 120 (S.D.N.Y.1995) ("The amount of administrative expenses is a significant issue in bankruptcy liquidation ... proceedings, because they are paid first, before any distribution to creditors."), *aff'd*, 104 F.3d 349 (2d Cir.1996) (table).

A & K asserted in the bankruptcy court that its fee application was filed pursuant to 11 U.S.C. § 330,[2] which provides that

[a]fter notice to the parties in interest and the United States Trustee and a hearing, ... the court may award to a trustee, an examiner, [or] a professional person employed under section 327 or 1103—

(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney ... employed by any such person; and

(B) reimbursement for actual, necessary expenses.

The creditors (now appellants) object that since A & K was neither a trustee nor an examiner, § 330 authorized A & K to receive fees from the estate only if it qualified as a professional employed under 11 U.S.C. § 327.[3]

§ 327(a) of the Bankruptcy Code provides:

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

■ By its terms, § 327(a) applies only to counsel employed by the "trustee." It does not expressly apply to counsel for "the debtor." [4] The Order of Employment signed by the bankruptcy judge on November 20, 1996 authorized A & K's "employment by the debtor." [5]

The objecting creditors maintain that the only way A & K is eligible for fees under the express language of § 330, therefore, is by claiming to be counsel for a "debtor in possession" which, by virtue of 11 U.S.C. § 1107(a), has "all the rights ... of a trustee serving in a case under this chapter." In their view, A & K's right to counsel fees at the expense of the bankruptcy estate (*i.e.*, as an administrative priority under § 503(b)(2)) ended with the appointment of a Chapter 11

**1.** 11 U.S.C. § 503(b)(2) provides in pertinent part: "After notice and hearing, there shall be allowed administrative expenses, ... including ... compensation and reimbursement awarded under section 330(a) of this title." Section 503 administrative expenses are granted priority over unsecured claims by 11 U.S.C. § 507(a)(1).

**2.** Application and Memorandum of Law of Andrews & Kurth, L.L.P., Pursuant To Section 330 of the Bankruptcy Code for Allowance of Compensation and for Reimbursement of Expenses Incurred ("Application") at 6.

**3.** 11 U.S.C. § 1103 is inapplicable. It defines the powers and duties of creditors' and equity security holders' committees appointed under 11 U.S.C. § 1102. No such committees were appointed in this case.

**4.** Prior to the Bankruptcy Reform Act of 1994, P.L. No. 103–394, 108 Stat. 4106(1944), § 330(a)

did include a reference to "the debtor's attorney." That reference was eliminated by the 1994 amendment to the Bankruptcy Code. See *Pro–Snax Distributors*, 204 B.R. at 494 nn. 2, 3.

**5.** The bankruptcy court authorized the employment of A & K *nunc pro tunc* as counsel for the debtor in possession, *Pro–Snax Distributors*, 204 B.R. at 493, but this authorization is not in the record on appeal. Due to this omission, it is unclear to this court whether the bankruptcy judge misstated A & K's status (*i.e.*, whether he meant to say that employment of A & K as counsel "for the debtor," rather than "for the debtor-in-possession," was authorized *nunc pro tunc*) or whether there was an authorization of A & K's employment as counsel for the debtor in possession apart from the November 20, 1996 order. The latter, if it exists, would seem to be an implicit concession (by A & K or the bankruptcy judge) that the award at issue cannot be justified on the ground that A & K was counsel for "the debtor." See below.

trustee, which automatically terminated Pro-Snax's status as a debtor in possession.

The position of A & K, on the other hand, which the bankruptcy court accepted, is that this is too narrow a reading of § 330(a)(1). *Pro–Snax Distributors,* 204 B.R. at 494–96. The bankruptcy judge agreed with the creditors that "normally attorneys' fees are not compensable after a trustee is appointed," but he concluded that "in this case it was reasonable for debtor to try to confirm a plan." Transcript of Findings of Fact and Conclusions of Law, September 16, 1996 at 4. While expressing misgivings about any benefit the estate received from the services rendered by A & K (*e.g.,* he rejected A & K's contention that it had been responsible for reducing the claim of Mission Foods/Fiesta Jimenez, a division of Gruma, Inc., by $500,-000; [6] he wasn't sure whether A & K's services "may have had some value to the estate"; and he agreed with the objecting creditors that A & K's opinion that Pro–Snax "could qualify as a small business debtor was flawed"), *id.* at 4–5, he nonetheless concluded that "[i]t appeared appropriate to give the debtor the opportunity to confirm a plan," *id.* at 3, and accordingly made the award of fees to A & K which is the subject of this appeal.

Though not finding a specific grant of authority for the award in the current version of § 330(a), the bankruptcy court reasoned that Congress must not have intended any change in substance by the 1994 deletion of the phrase "the debtor's attorney," because such a major change in bankruptcy practice presumably would not be effected without at least some discussion of it in the legislative history. 204 B.R. at 495 (citing *Dewsnup v. Timm,* 502 U.S. 410, 419, 112 S.Ct. 773, 779, 116 L.Ed.2d 903 (1992), and *In re Rash,* 90 F.3d 1036, 1050 n. 18 (5th Cir.1996) (en banc)).[7] It thereupon concluded that A & K was entitled to the award of fees sought, albeit in a reduced amount. A & K defends this decision on the ground that the "bankruptcy court is one of equity and thus has broad, equitable—and hence discretionary—power to award attorneys fees." Brief of A & K at 4 (quoting *In re Anderson,* 936 F.2d 199, 204 (5th Cir.1991)).[8]

## IV. CONCLUSION

This court disagrees with the analysis of the bankruptcy court. Its award is contrary to the plain language of § 330(a) in its current version and must find support, if at all, in the concept that Congress did not mean what it said in the 1994 amendments to the Bankruptcy Code or, alternatively, that the bankruptcy court has inherent authority to make exceptions to the American Rule. Neither of these positions is persuasive. "[M]indful that Congress legislates against the strong background of the American Rule," *Fogerty,* 510 U.S. at 533, 114 S.Ct. at 1033, "[r]ecognition of the availability of attorney's fees therefore requires a determination that 'Congress intended to set aside this longstanding American rule of law.'" *Key Tronic Corporation,* 511 U.S. at 815, 114 S.Ct. at 1965. Here, the only indication that Congress intended to change the American

---

6. *See* Application at 12.

7. *In re Rash,* 90 F.3d 1036, 1050 n. 18 (5th Cir.1996) (en banc), cited by the bankruptcy court in support of its conclusion that no substantive change was intended by the 1994 amendment to § 330(a), stated that "clear textual guidance is necessary to justify a departure from prior bankruptcy law," citing *Dewsnup v. Timm,* 502 U.S. 410, 433, 112 S.Ct. 773, 788, 116 L.Ed.2d 903 (1993) (Scalia, J., dissenting). However, the Fifth Circuit's approach in *Rash* was unanimously rejected by the Supreme Court in *Associates Commercial Corporation v. Rash,* — U.S. —, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997).

8. *In re Anderson,* 936 F.2d 199 (5th Cir.1991), did not involve the question presented here, *viz.,* whether the Bankruptcy Code authorizes the award of attorneys' fees. The appellant in *Anderson* was an attorney who maintained that the bankruptcy court's award of fees to him was too low. 936 F.2d at 201–02. The trustee and the debtor cross appealed, contending that the attorney should have received no fee because he violated the Bankruptcy Code and Rules. *Id.* at 202. In this context, the Court of Appeals—acknowledging that because of the attorney's derelictions it "would likely have affirmed a total disallowance of the fees had the bankruptcy court so held", *id.* at 204—did "not find an abuse of discretion in the grant of attorney's fees vel non or in the amount granted." *Id.* Significantly, no party in *Anderson* contended that the Bankruptcy Code or the American Rule precluded an award of fees.

Rule (and thus to allow attorney's fees) is the fact that, prior to 1994, § 330 allowed such an award to "the debtor's attorney." The bankruptcy court's decision that the deletion of this language was meaningless, *i.e.*, that Congress could not have meant what it literally said in the 1994 amendments, falls woefully short of the "explicit congressional authorization," *Key Tronic Corporation*, 511 U.S. at 814, 114 S.Ct. at 1965 (emphasis added), required for departure from the American Rule.

 Nor is it plausible that the bankruptcy court has inherent authority to make exceptions to the American Rule, except in the three classes of cases explicitly recognized by Supreme Court decisions such as *Alyeska Pipeline Service Company*, 421 U.S. at 257–60, 95 S.Ct. at 1621–23, and *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46, 111 S.Ct. 2123, 2133–34, 115 L.Ed.2d 27 (1991), for Congress has not "extended any roving authority to the Judiciary to allow counsel fees as costs or otherwise whenever the courts might deem them warranted." *Alyeska Pipeline Service Co.*, 421 U.S. at 260, 95 S.Ct. at 1623.

In these circumstances, since the creditors appear to acknowledge that A & K is entitled to a fee for the period before a Chapter 11 trustee was appointed, the fee award must be returned to the bankruptcy court for recalculation. See *Matter of Coston*, 991 F.2d at 261 n. 3 (if an appellate court determines that the bankruptcy court's factual finding is predicated on an erroneous view of the law, the appellate court should usually remand for further proceedings under the appropriate legal standard); see also *Matter of Hargis*, 895 F.2d 1025, 1026 (5th Cir.1990) (on rehearing) (where bankruptcy court had improperly denied attorney's fee, case would be remanded

to the bankruptcy court for the determination of a reasonable fee under the appropriate legal standard). This recalculation must be made against the backdrop of the American Rule, any statutory exceptions to that rule applicable in this case, and the usual standards for the award of fees to be paid by other parties to the litigation. As to the latter, the bankruptcy judge nodded in passing to some of the factors recognized in the case law for determining a reasonable fee, see Transcript of Findings of Fact and Conclusions of Law, September 16, 1996 at 8, but he appears to have ignored the most critical one: degree of success. Compare *Farrar v. Hobby*, 506 U.S. 103, 114, 113 S.Ct. 566, 574, 121 L.Ed.2d 494 (1992) ("the degree of the plaintiff's overall success goes to the reasonableness" of a fee award; indeed, "the most critical factor" in determining the reasonableness of a fee award "is the degree of success obtained") (citations omitted) [9] with the bankruptcy court's findings in this case ("the debtor did not have many successes in this case in terms of accomplishment"). Transcript of Findings of Fact and Conclusions of Law, September 16, 1996 at 8.

For these reasons, the order of the bankruptcy court awarding fees to A & K is **REVERSED**, and the case is **REMANDED** to that court for further proceedings in conformity with this opinion.

**SO ORDERED.**

**9.** The bankruptcy court found that "in this case it was *reasonable* for debtor to try to confirm a plan." Transcript of Findings of Fact and Conclusions of Law, September 16, 1996 at 4 (emphasis added). The standard under § 330(a)(1)(A), however, is whether an attorney's services were "necessary," *i.e.*, whether they were beneficial to the estate. See *In re Dixon*, 143 B.R. 671, 678 (Bankr.N.D.Texas 1992) (McGuire, C.J.) ("The main inquiry under § 330 is whether the post-petition services were neces-

sary and benefitted the estate."); *In re Lederman Enterprises, Inc.*, 997 F.2d 1321, 1323 (10th Cir. 1993) ("An element of whether the services were 'necessary' [under § 330] is whether they benefited the bankruptcy estate.") (citation omitted); cf. *In re Ward*, 894 F.2d 771, 777 (5th Cir.1990) (case remanded to the bankruptcy court for redetermination of attorney's fee where the value of the attorney's services to the estate had become uncertain in light of subsequent developments) (decided under the Bankruptcy Act of 1898).